263 So.2d 875

**ASCENSION BUILDERS, INC.**

v.

**Wallace C. JUMONVILLE et al.**

No. 51789.

June 29, 1972.

Dissenting Opinion June 30, 1972.

Neal N. Bagwell, White Castle, Diaz & Herrin, Edward T. Diaz, Golden Meadow, for defendants-applicants.

Crawford, Lambert & Goldsmith, John L. Goldsmith, Gonzales, for plaintiffs-respondents.

SUMMERS, Justice.

This is an appeal from a judgment rendered by default.

Plaintiff, Ascension Builders, Inc., instituted this suit on November 17, 1967 against Wallace Jumonville, Jr., Gertrude Jumonville, Chester A. Melancon and Mary Helen Jumonville Melancon, alleging they were indebted to plaintiff in the sum of $6,958.81 with interest and costs. The petition also alleges defendants

. . . purchased materials from plaintiff and plaintiff performed certain labor for defendants as set forth on the itemized statement of account annexed hereto; that said labor and materials were furnished for use in and actually used in the construction of a place of business known as Jumonville's Bakery owned by the defendants located on lots Numbers 1, 2 and 3 of Bella Rina Subdivision in the Town of Gonzales.

The petition then sets forth:

. . . petitioner executed a lien affidavit on October 4, 1967, for the purpose of preserving the lien and privilege granted by law to plaintiff, that said lien was duly recorded in the mortgage records of Ascension Parish within sixty (60) days after the date of (sic) the last material was delivered or labor performed on (sic) the construction of the building was completed.

After alleging that it was entitled to have its lien recognized, plaintiff prayed for judgment in the amount alleged to be due with interest and cost and for recognition and enforcement of its lien, for the seizure and sale of the property, and reservation of the right to claim a deficiency judgment.

The itemized statement annexed to the petition is dated June 12, 1967 and lists the "Purchases and work authorized by owners in excess of Contract price," amounting to $5,716.32 and a balance "due on original contract" of $1,242.49, a total of $6,958.81, the amount sued for.

A preliminary default was entered against defendants on March 29, 1968 and again on May 8, 1968. Thereafter, on May 13, 1968, a judgment was rendered on confirmation of default reciting: "On Motion of Robert L. Roshto, attorney for plaintiff, and upon producing due proof in support of plaintiff's demands, the law and the evidence being in favor of plaintiff and against defendants . . . ." Judgment is then rendered in favor of plaintiff against defendants for $6,958.81, the amount prayed for, and, further, plaintiff's lien is ordered recognized and enforced on the property described in the petition, and the property is ordered seized and sold, reserving to plaintiff the right to claim a deficiency should the sale not satisfy its claim.

There is no written transcript of evidence, and there are no documents or other evidence filed in the record other than the petition, and the annexed account referred to. The clerk's certificate makes clear that the record is complete in this state.

After rendition of judgment, defendants filed their answer, a general denial, alleging that they entered into a contract for construction of a bakery building in accordance with specifications set forth in the contract, it being alleged that the contract was attached to the answer. However, no contract is attached.

■ The answer then alleged that the construction was faulty and the materials defective to the extent that the building was not suitable for the purposes intended. Demolition and reconstruction of the bakery building is alleged to be necessary, during which time defendants' business would suffer losses for which defendants pray for judgment in reconvention. Since this answer was filed on May 15, 1968, two days after judgment was rendered on May 13, 1968, the answer cannot be considered. La. Code Civ. P. art. 1002.

A motion for a new trial was also filed, tried and denied, whereupon a suspensive appeal was taken to the First Circuit. Finding no basis in the record to support the default judgment, the Court of Appeal reversed the trial court and remanded the case for further proceedings there. La. App., 251 So.2d 639. We granted review, 259 La. 895, 253 So.2d 221.

■■ There is no requirement that a party confirming a default must have the testimony reduced to writing or that a note be made of the evidence introduced, and when a judgment has been rendered and no note of evidence has been made, it is

incumbent on the party desiring to appeal to secure a narrative in accordance with Articles 2130 and 2131 of the Code of Civil Procedure. Succession of Moore, 42 La. Ann. 332, 7 So. 561 (1890); Francois v. Cloud, 149 So.2d 678 (La.App.1963). This was not done.

 In order to obtain reversal of a default judgment appealed from, or to obtain a remand, defendant must overcome the presumption that the judgment was rendered upon sufficient evidence and that it is correct. When the judgment recites, as it does here, that plaintiff has produced due proof in support of its demand and that the law and evidence favor plaintiff and are against the defendant, the presumption exists that the judgment was rendered upon sufficient evidence and that it is correct. Baker Finance Co. v. Hines, 255 La. 971, 233 So.2d 902 (1970); Massey v. Consumer's Ice Co. of Shreveport, 223 La. 731, 66 So.2d 789 (1953); Nugent v. Stark, 34 La.Ann. 628 (1882).

This presumption which exists, when there is no note of evidence of parole testimony, that the judgment is well-founded and that it was based on competent evidence, is a fair and reasonable one conducive to the efficient administration of justice and should be given much weight. It has long been recognized in our law. Escurieux v. Chapduc, 4 Rob. 323 (La.1843); Hubbell v. Clannon, 13 La. 494 (1839).

██ But it is, after all, only a presumption. It does not attach when the record upon which the judgment is rendered indicates otherwise. The presumption cannot be applied, for instance, in a case where the plaintiff's demand is one which of necessity, under the law, depends upon written proof. In such a case there should be more to support the presumption than the mere statement, more or less *pro forma*, that the court, on confirmation of default, receives "due proof in support" of the demand, or " 'the law and evidence being in favor thereof.' " Francois v. Cloud, supra; Landreneau v. Perron, 174 So. 140 (La. App.1937).

The question, then, is whether the absence from the record of the written building contract and the lien affidavit which form the basis of this suit makes it appear that the judgment was not rendered upon sufficient evidence and is not for that reason correct. If this is so, the presumption of legality which attaches to this judgment is removed, and the record must be found to be insufficient to support the judgment.

A written contract was undoubtedly entered into by the parties and is the basis for the construction of the bakery building. The itemized statement annexed to the petition and made a part thereof refers to the balance "due on original contract." This language alleges a contract. Plaintiff's counsel, moreover, concedes in brief

that "although a contract does exist it is not recorded."

To do away with the presumption it should be established that of necessity, under the law, this claim depended upon the written proof which the contract would provide. Proof, in its simplest form, is the means employed to convince the judge; it is all that which convinces the mind of a truth.

 And a right is nothing without proof of the juridical act or material fact which it has as its origin. A contract is the proof the parties have established in advance to govern their relationship in the event of suit. The contract is the law between the parties. La.Civil Code art. 1945. Where such a contract is shown to exist, witnesses and presumption are, in principle, discarded. Since a valid presumption would dispense with proof, if it can be shown that the presumption no longer had any basis for existence, proof will be required. La.Civil Code arts. 2284–88; Planiol, Civil Law Treaties, Vol. 2, Nos. 2–54.

 Thus a plaintiff who knows of a writing which is the principal basis for his claims must produce it when it is the best evidence of the facts at issue. Cf. La. Civil Code art. 2775; Breaux v. Laird, 230 La. 221, 88 So.2d 33 (1956); Hamill v. Moore, 194 La. 486, 193 So. 715 (1940); Marks v. Winter, 19 La.Ann. 445 (1867).

And parole evidence of the content of written instruments is not admissible, La. Civil Code art. 2276, except under circumstances prescribed by law. La.Civil Code art. 2279.

Article 2277 of the Civil Code is pertinent here, for it provides that:

All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, *which are not reduced to writing*, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances. (Emphasis added.)

 This Article, we think, applies inversely to the situation before us. In prescribing the mode of proof for contracts not reduced to writing, by clear implication it prescribed that when the contract is reduced to writing, the writing is the required proof.

 In addition to our conviction that this case requires the production of the written contract to support plaintiff's claim, we are certain that the affidavit which is the subject of the lien and privilege must be produced and filed in the record of the proceedings to support that part of the judgment which recognized the lien and orders it enforced. La.R.S.

9:4812; cf. La.Civil Code art. 2775. A document is not only necessary to establish that the affidavit was made, but proof of its recordation must also be made by written evidence, either a certified copy of the recorded instrument or a certificate of recordation signed by the Clerk and Recorder.

It may be that plaintiff exhibited the original to the judge on the occasion when the judgment by default was confirmed. But this is not sufficient. Where an original recorded instrument is introduced in evidence, leave of court must be obtained to substitute a certified copy and the certified copy must be filed in the record of the proceedings to support the judgment by default. Escurieux v. Chapduc, 4 Rob. 323 (La.1843); W. T. Rawleigh Co. v. Copeland, 169 So. 251 (La. App.1936). No such document appears in this record.

It is therefore ordered that the judgment of the trial court be annulled and set aside, and this case is remanded to the court a quo for a new trial.

SANDERS, J., concurs in the result.

BARHAM, J., dissents and assigns reasons.

TATE, J., dissents and assigns written reasons.

TATE, Justice (dissenting).

I respectfully dissent. The majority's holding is contrary to Delahoussaye v. Ackal, 261 La. 200, 259 So.2d 63 (1972), and numerous other decisions of this court.

On May 13, 1968, the trial court awarded a default judgment in favor of the plaintiff. The judgment recited that such judgment was entered only after the plaintiff had produced "due proof in support of plaintiff's demands". The trial court further recited that the judgment was entered confirming the earlier preliminary default, "the law and the evidence being in favor of the plaintiff and against the defendants".

Now, four years later, this court sets aside such default judgment because it cannot find in the record certain documents. There is no written transcript of the evidence and no indication in the record that such documents were not introduced, if indeed necessary (under the best evidence rule) in the absence of objection to oral testimony proving them.

The majority thus ignores the settled jurisprudence of this court, just recently reaffirmed in Delahoussaye v. Ackal, 261 La. 200, 259 So.2d 63 (1972), that these judicial recitations in a judgment rendered upon confirmation of a default are presumed to be correct and that the judgment so entered must be presumed to be based upon legal and sufficient evidence. Such

presumption that the judicial proceedings were proper only obtains, of course, "when the *contrary* does not appear *in the record*", Baker Finance Co. v. Hines, 255 La. 971, 233 So.2d 902, 903 (1970) ; but the contrary does not appear in this record.

The majority ignores these well settled principles, and ignores the strong presumption that the conscientious district court only entered the judgment after receiving due proof, because, in the physical record before us on appeal, we do not find the written building contract and lien affidavit forming part of the basis for the demand.[1] I should here note that the defendants nowhere allege that, in fact, the building contract was not introduced, nor that the lien was not timely recorded and then introduced at the trial. The defendants simply argue that the absence of these documents from the appellate record (no matter if through inadvertence of the Clerk, or if through loss during the 2½ years the Clerk took to prepare the record—see below) justifies this appellate court in setting aside this default judgment entered four years ago, after the defendants had full opportunity (see below) to defend and failed to do so.

Our civil procedure is designed to permit prompt determination of our litigation on the merits, after full and fair opportunity to defend. In processing the mass of civil litigation before our courts, the default judgment is a recognized and valuable part of determining a considerable volume of litigation finally, when in fact there is no defense or when, in fact, the defendant has had a fair and full opportunity to defend but fails to do so. To introduce such technicalities in the review of default judgments—in the absence of any real showing that the defendants were deprived of their day in court or that, actually, they really have any defense on the merits—is to justify appellate review directed toward technicalities, not substance.

The majority assumes that, because these documents are not physically in the record before us on appeal, they were not introduced when the default was confirmed. I know of no authority justifying this assumption. Quite the contrary, the uniform jurisprudence is otherwise.

From my own period of practice, I know that in many judicial districts of our State the practice in confirmation of defaults is to introduce, when a necessary element of proof, original documents from the clerk's office. Sometimes the theory is that the court can take judicial notice of documents filed in its own clerk's office, or sometimes this is done "with leave to substitute a certified copy"; but in any case the trial

---

1. The majority does not mention that at least $5,716.32 of the demand can be regarded as recoverable by monied judgment upon an open account, needing no proof of the building contract or of the timely lien recordation.

judge has the original documents before him when the default confirmation judgment is granted. (The clerk's office naturally returns the original documents to its own files.)

I see no harm in this practice. I cannot *justify this appellate court now requiring* more than this, for the first time in our history, and thus encumbering the records and adding to the expense of the thousands of default confirmations which are not appealed, simply in order to present a more complete record for the few default judgments which are appealed.

To cause the plaintiff-*appellee* to lose his judgment because of this deficiency in the appellate record is particularly unfair under the present facts.

The plaintiff filed his suit on November 17, 1967, four and a half years ago. On December 4, 1967, the defendants filed a "Motion for Extension of Time to *Answer*"; they were given a delay of 20 days to do so. When they failed to answer after this delay, *two months later* the plaintiff entered its first preliminary default on March 29, 1968.

On April 2, 1968, the defendants obtained an *additional* 40 days, or until May 6, 1968. The defendants also moved to set aside the default on April 5, 1968, stating that "it previously being understood as between counsel for both parties that the

movers herein intended to file exceptions and motions prior to filing an answer". When this *additional* 40-day period expired on May 6, 1968, the defendant *still* had filed *no* responsive pleadings.

The plaintiff therefore moved for and obtained a preliminary default on May 8, 1968. At this time, to recapitulate, the defendants had never filed an exception or an answer to the suit filed six months earlier, although the defendants had twice secured delays in order to permit them to answer or file pleadings.

On May 13, 1968, five days later, on the plaintiff's motion the district judge confirmed the default, reciting that due proof had been made before him and that the law and the evidence justified such default judgment.

The defendants then on May 15, 1968 filed an answer. (This denied the allegations of the petition and set forth a reconventional demand alleging that the construction work was defective.)

The defendants then also filed a motion for a new trial. The motion for the new trial assigns as reasons various frivolous objections to the petition (properly raised by exceptions of vagueness, etc.). It further makes certain allegations to the effect that the plaintiff should not have moved for and obtained a preliminary default and confirmed it because it knew the defend-

ants were represented by counsel.[2] *It is significant that at no place in this motion for a new trial do the defendants allege that insufficient evidence was introduced to justify the preliminary default.*

When this motion for a new trial was denied, the defendants appealed on May 29, 1968, the record being returnable to the court of appeal on July 25 of that year. This record is *29* pages in length, including the four pages of the motion for appeal and the appeal bond.

Following this, the clerk of court obtained *34* extensions of time within which to prepare and lodge this 29-page record, the last expiring on December 12, 1970, some three years after the suit had been filed, and some two and a half years after the trial court judgment had been obtained. The record was then lodged in the court of appeal on December 7, 1970.

I respectfully suggest that this sad history demonstrates determined delaying tactics on the part of the defendants-appellants. The plaintiff-appellee should not be penalized and his property right in the judgment destroyed simply because we do not find in this long-delayed appellate record any documentary proof or its equivalent, which the trial court *must* have had before it (under its recitations) at the time it rendered judgment.

I must further note, in the strongest possible terms, that the defendants-appellants *never* allege there was no building contract or no timely-recorded lien—their motion for a new trial indicates only that they claim they had a defense on the merits based upon the alleged poor workmanship of the construction performed for them (now) years ago.

For these reasons, perhaps too lengthily stated, I must respectfully dissent from our failure, in this lone instance in our jurisprudence, to apply the well settled principle that, *unless the contrary be shown by the record,* the appellate courts will not set aside a default judgment where the trial court, presumed to be (and, in fact) conscientious and learned, recites that due proof and sufficient evidence were presented to it to justify, in law, the confirmation of the default.

BARHAM, Justice (dissenting).

I subscribe to the reasons assigned by Mr. Justice TATE in his dissent.

---

2. The appeal to equitable reasons is, it seems to me, peculiarly inappropriate in view of the six-month delay of defendants' counsel to file pleadings, despite the great delays given to them to do so—the effect of their failure to file such pleadings was to deny the plaintiff its day in court. The plaintiff's only recourse *was* to move for a preliminary default and then confirm it.