SAMUEL, Judge.
This matter originated as a suit on two promissory notes by plaintiff, Henry L. Muller, against the maker of the notes, Cinnamon Tree, Inc., and two endorsers, Angelo D. Marsalone and Peter Giacona. One note was executed on January 16, 1976 in the amount of $70,000 and was endorsed by Marsalone and Giacona. The other note, in the amount of $30,000, was executed on March 23, 1976 and was endorsed by Mar-salone only.
Marsalone answered, asserting numerous defenses to plaintiff’s suit, including lack of adequate consideration and invalid endorsement. In the alternative, he also filed a third party demand seeking indemnity against James Anthony, Sam J. Recile, and Brian Investment Ltd., alleging they had agreed to indemnify him from any outstanding liability by Cinnamon Tree to plaintiff. Those third party defendants answered, generally denying Marsalone’s third party petition.
Marsalone admitted liability on the principal demand and, after trial on the merits of his third party demand, judgment was rendered against him, dismissing his third party demand against Anthony, Recile, and Brian Investment. Marsalone has appealed.
At the outset third party defendants move for a dismissal of the appeal on the ground it was not perfected timely. The record reveals the trial court’s judgment denying appellant’s motion for a new trial was signed on September 25, 1978. The motion for appeal was filed on November 22, 1978, but the order of appeal was not signed by the trial judge until November 27, 1978. Third party defendants argue the appeal was not properly perfected under Code of Civil Procedure Article 2087 because, although the motion was filed timely, the order of appeal was not signed until more than sixty days after the court’s refusal to grant a new trial.
Under the same circumstances we recently have held,[1] and the Supreme Court has affirmed,[2] when a motion for appeal is filed timely any delay by the clerk or the trial judge in connection with signing the order of appeal is not imputable to the appellant and does not result in a dismissal of his appeal. The record shows defendant’s motion was filed timely, and consequently the trial judge’s delay in signing the order is no longer of legal import.
The basis for appellant’s claim against third party defendants for indemnity is a letter dated May 11, 1976, which was executed by Brian Investment and appellant. This letter agreement is quite extensive, and sets forth at least ten separate transactions between those two parties. Although appellant cites as error the trial judge’s refusal to allow introduction of evidence under the other paragraphs dealing with separate, independent transactions, our examination of the letter at length reveals only Paragraph 5 thereof has any relevance to the case at hand. Paragraph 5 reads:
*535 “Brian agrees to purchase 51% of the capital stock in Swanson’s Restaurant, Inc. or Cinnamon Tree, Inc. [which operated Swanson’s], from me and the other stockholders and agrees to hold me harmless on account of any indebtedness in connection therewith, this being with the distinct understanding that I am able to retain approximately 20% of the stock of the said Corporation, provided that I am able to get the other stockholders to agree to join with me in any sale upon similar terms.”
In his reasons for judgment, the trial judge found as a fact that no indemnity agreement existed between appellant and third party defendants under the quoted portion of the May 11, 1976 letter because the conditions stated in Paragraph 5 were never met and, consequently, an indemnity agreement involving Cinnamon Tree never was perfected.
In addition to assigning as error the trial judge’s restriction of evidence to Paragraph 5 of the May 11 letter, appellant also argues the trial judge committed error in failing to require a return on a subpoena duces te-cum, and he contends the judgment rendered was clearly contrary to the weight of the evidence.
First, the trial judge was correct in limiting the evidence to Paragraph 5 of the May 11 letter agreement quoted above. That agreement on its face contemplated numerous transactions between appellant and Brian, each involving separate properties or investments and each having its own consideration for a promise of indemnity. Appellant appears to argue, without citation of legal authority, that proof of fulfillment of the conditions in other paragraphs of the agreement indirectly would prove fulfillment of the conditions set forth in Paragraph 5 and thus render that part of the agreement enforceable.
We agree with the trial judge that each of the separate agreements contained in numbered paragraphs of the May 11 letter stands on its own, and proof of fulfillment of conditions in other paragraphs of the agreement have no relevance whatever to fulfillment of the suspensive condition contained in Paragraph 5. The trial judge did not commit error by limiting evidence to compliance with the provisions of Paragraph 5.
Next, appellant argues the trial judge did not act properly in handling the return on a subpoena duces tecum served by him on Brian Investment. On the first morning of trial, the judge ordered Brian Investment to bring certain documents to court the next morning. He did not order all documents subpoenaed to be brought, but selected those which should be produced. Appellant made no objection to the ordered partial return of the subpoena duc-es tecum. Moreover, he did not call for a return on the subpoena until later in the week, even though the documents were produced in accordance with the court order. Under these circumstances, we can only conclude the appellant acquiesced in the ruling and cannot argue on appeal for the first time that a proper return of the subpoena duces tecum was not made.[3] In addition, the. burden was upon appellant to call for a return of the subpoena, and by failing to do so timely, he cannot now argue prejudice thereby.[4]
The final issue is whether appellant proved an enforceable indemnity agreement on the Cinnamon Tree obligation between himself and the third party defendants.
Paragraph 5 of the letter agreement of May 11, 1976, quoted above, provides that Brian Investment agrees to purchase 51% of the capital stock in Cinnamon Tree (or Swanson’s Restaurant) from appellant and the other stockholders and agrees to hold defendant harmless from any indebtedness in connection with Cinnamon Tree, if (1) appellant retains approximately 20% of the stock of the corporation, and if (2) appellant is able to obtain cooperation of the other stockholders to sell on similar terms.
*536 The language of the document appears to have been confected in such a way because on May 11, 1976 appellant was the owner of 53% of the shares of Swanson’s and 43% of the shares of Cinnamon Tree. The remainder of the stock in both corporations were owned by Henry Muller, Peter Giacona, and James Anthony. Therefore, as of May 11, 1976, appellant would have been unable to perform in accordance with the terms of Paragraph 5 since he could not have simultaneously transferred 51% of the shares of the corporation and maintained ownership of an additional 20%. It is clear from the face of the document that the hold harmless agreement by Brian Investment was conditioned upon the sale to it of 51% of the shares of stock, and the ability of appellant to obtain the agreement of the other shareholders to join in the sale on similar terms, with appellant retaining 20% of the remaining stock. If these conditions had been met, then Brian Investment would have been bound to hold defendant harmless. But, as found by the trial judge, and we agree with that finding, these conditions were not met and the hold harmless provision never came into effect.
There is nothing in the record to indicate any agreement by Recile or Anthony individually to indemnify appellant. Both in deposition and at trial, appellant insisted his rights to indemnity emanated from Paragraph 5 of the May 11 letter, which makes no reference to Recile or Anthony. The document was signed by Recile, but only as president of Brian Investment, and it was not executed by Anthony in any capacity. Having admitted his claim for indemnity arose only out of a written agreement, evidence of any oral indemnity agreement (even if such an agreement would be enforceable) is not admissible.[5] Hence, there is no basis in the record for any claim by appellant against Recile or Anthony in their individual capacities.
The primary basis for appellant’s contention that the third party defendants agreed to indemnify him is his insistence that on May 11, 1976 he conveyed all the stock to Brian Investment by use of a separate “stock power.” He thus contends that on the same day of the written agreement he waived the conditions of that agreement in his favor by actually making a written transfer of the stock subject to the agreement.
It is questionable whether any such stock power would have been effective in the present case since the stock allegedly transferred by the stock power was “lettered” stock upon which there was a covenant, incorporating a portion of the articles of incorporation, to afford the other stockholders the right of first refusal to the stock before it could be transferred to a third party. The record does not indicate compliance with the condition on the “lettered” stock, and it is highly doubtful that the alleged stock power would have been sufficient to meet the terms of the May 11, 1976 letter. The trial judge did not decide this question, nor did he address the question of whether appellant could unilaterally alter the written terms of the May 11 letter agreement by simply endorsing a stock power. Instead, he found as a fact that the stock power had never been executed and the transfer of the stock had never occurred.
The alleged stock power as not produced at the trial, nor was any secondary evidence in the form of witnesses to the alleged document offered to establish its existence. Recile testified the stock power never existed. Brian Investment produced a stock power relating to the transfer of stock in Courtney Corporation, Inc., the subject of Paragraph 2 of the May 11, letter agreement. Defendant himself produced a copy of a stock power relating to Mony Oil & Gas, Ltd., covered under Paragraph 3 of the May 11 agreement. Appellant attempted to explain the absence of his copy of the stock power relating to Swanson’s and Cinnamon Tree by stating these documents were stolen in a burglary of his office. However, he testified the stock powers were witnessed by two individuals known to *537 him, neither of whom was called as a witness, and whose absence he did not attempt to explain. In his reasons for judgment, the trial judge concluded the absence of these witnesses raised the inference that their appearance would have produced testimony unfavorable to appellant’s position.[6] We agree with this conclusion.
Further, a May 21, 1976 letter was introduced into evidence in which there were statements clearly indicating the agreement to transfer 51% of the shares of Swanson’s had not been completed. This letter was accepted and approved by appellant’s signature on May 21, 1976, thereby further indicating the correctness of the statements contained in it, which statements contradict his assertion that he had transferred 51% of the shares of Swanson’s and Cinnamon Tree on May 11, 1976 by written stock power.
Finally, an August 9, 1976 letter from defendant’s then attorney to Brian Investment was admitted into evidence. This letter states the sale and transfer of the stock in Cinnamon Tree and Swanson’s by appellant to Brian Investment had not yet occurred as of that date and was yet contemplated, subject to approximately 15 conditions set forth in the letter. Appellant’s attorney himself testified he was unaware that any stock power transferring the shares of Swanson’s or Cinnamon Tree to Brian Investment had been executed. He further stated he would not have written the letter had he known of such a transfer.
Moreover, in an undated document, appellant called for a shareholders’ meeting of Swanson’s and in that letter he represented himself, together with Giacona, as a holder of more than 20% of the outstanding stock in Swanson’s. Even though the document was undated, both Anthony and appellant himself testified this document was executed within 10 days of October 8, 1976.
The trial judge’s conclusion that no transfer of the stock in question had taken place is amply supported by the evidence. This court itself has made a similar finding in First Nat. Bank, etc. v. Louisiana Purchase.[7] Accordingly, we conclude there is not sufficient evidence in the record for us to entertain a reversal of the trial judge’s findings of fact.[8]
For the reasons assigned, the motion to dismiss the appeal is denied and the judgment appealed from is affirmed.

AFFIRMED.

. Scales v. State, La.App., 391 So.2d 871.

. Scales v. State, handed down by the Supreme Court of Louisiana on May 18, 1981, and as yet unreported.

. See Troxlair v. Illinois Central Railroad Company, La.App., 291 So.2d 797.

. Compare, Heiss v. Corcoran, 15 La.Ann. 694.

. Ascension Builders, Inc. v. Jumonville, 262 La. 519, 263 So.2d 875.

. For a discussion of such an inference, see Burt v. Hebert, La.App., 338 So.2d 717.

. La.App., 346 So.2d 345.

. See Canter v. Koehring Company, La., 283 So.2d 716.