569 So.2d 115 (1990)
Joel TRAVIS
v.
COMMERCIAL UNION INSURANCE COMPANY.
No. 89 CA 0576.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*116 William Magee, Covington, for plaintiff-appellee.
Edward A. Rodrigue, Jr., Terry B. Deffes, New Orleans, for defendant-appellant.
Before LOTTINGER and CARTER, JJ., and DOHERTY,[*] J. Pro Tem.
CARTER, Judge.
This appeal arises out of a default judgment.

FACTS
On December 28, 1987, Marcel DeLeebeck, d/b/a Joe's Stop-N-Shop, requested that plaintiff, Joel Travis, assist him in moving a bait machine from his place of business to his home. Travis used his own vehicle to assist DeLeebeck in moving the bait machine. In the course of moving the machine onto Travis' vehicle, the machine shifted, causing Travis to fall and to sustain injuries.
On August 3, 1988, Travis filed suit for damages against Commercial Union Insurance Company (Commercial Union), as the alleged liability insurer of Marcel DeLeebeck, d/b/a Joe's Stop-N-Shop. Thereafter, Travis filed requests for production of the policy of insurance and admissions of certain facts.
Commercial Union did not answer the petition, nor did it answer or object to the requests for admissions. A default judgment was subsequently obtained against Commercial Union on January 5, 1989. In rendering the default judgment, the trial court determined that the Commercial Union policy, a portion of which was introduced into evidence, covered the accident.
*117 In his written reasons for judgment, the trial judge stated:
Plaintiff used the truck he owned to assist DeLeebeck in closing his business. He did not loan the truck to DeLeebeck for his use. The exclusion of Section II, Part B does not apply to `D. A private passenger non-owned automobile used in your business by any person other than yourself.'
Accordingly, the trial court awarded Travis special damages of $1,209.00 and general damages of $10,000.00.
From this adverse judgment, Commercial Union appeals, assigning the following errors:
(1) The trial court erred in finding coverage under a Commercial Union policy without competent evidence of an insurance policy.
(2) The trial court erred in finding that a claim for injuries sustained while loading a vehicle falls within the coverage of a general liability policy.

DEFAULT JUDGMENT
LSA-C.C.P. art. 1702A provides, in pertinent part, as follows:
A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case.
In order to confirm a judgment by default, the plaintiff must establish the elements of a prima facie case. A prima facie case is established only when the plaintiff proves the essential allegations of his petition, with competent evidence, to the same extent as if these allegations had been specifically denied. Thibodeaux v. Burton, 538 So.2d 1001 (La.1989); Auburn County v. Sheraton Hotel, 559 So.2d 41 (La.App. 4th Cir.1990); Campbell v. Kendrick, 556 So.2d 140 (La.App. 5th Cir.1990); Savic v. Assurance Company of America, 509 So.2d 460 (La.App. 3rd Cir.1987); Philip Werlein, Ltd. v. Central First Baptist Church, 489 So.2d 1026 (La.App. 1st Cir. 1986). In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at a trial on the merits. Thibodeaux v. Burton, 538 So.2d at 1004; Auburn County v. Sheraton Hotel, 559 So.2d at 43.
When the judgment recites that plaintiff has produced due proof in support of his demand and that the law and evidence favor the plaintiff and are against the defendant, the judgment is presumed to be rendered on sufficient evidence and to be correct. Succession of Rock v. Allstate Life Insurance Company, 340 So.2d 1325 (La.1976); Ascension Builders, Inc. v. Jumonville, 262 La. 519, 263 So.2d 875 (1972); Sudds v. Protective Casualty Insurance Company, 554 So.2d 149 (La.App. 2nd Cir. 1989). In order to obtain a reversal of a default judgment appealed from or to obtain a remand, the defendant must overcome the presumption that the judgment was rendered upon sufficient evidence and that it is correct. Succession of Rock v. Allstate Life Insurance Company, 340 So.2d at 1328-1329; Ascension Builders, Inc. v. Jumonville, 263 So.2d at 878. However, the presumption that the default judgment was rendered upon sufficient evidence and is correct does not apply where the testimony is transcribed and is contained in the record. Sudds v. Protective Casualty Insurance Company, 554 So.2d at 150-151; Savic v. Assurance Company of America, 509 So.2d at 462; Baham v. Faust, 373 So.2d 725 (La.App. 1st Cir.1979). In such a case, the reviewing court is able to determine from the record whether the evidence on which the judgment is based was sufficient and competent. Dunaway v. Woods, 470 So.2d 574 (La.App. 1st Cir. 1985); Hookfin v. Bourne, 469 So.2d 24 (La.App. 1st Cir.1985); Weaver v. Weaver, 438 So.2d 1149 (La.App. 1st Cir.1983).
In the instant case, the trial court record contains the transcribed testimony taken at the confirmation of default hearing. Accordingly, the presumption that the judgment was rendered upon sufficient evidence and is correct is inapplicable, and this court must determine whether the evidence upon which the judgment is based was sufficient and competent.

EVIDENCE OF INSURANCE COVERAGE
LSA-C.C.P. art. 1702B(1) provides:

*118 When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
Generally, when an obligation is based on a writing, prima facie proof of the obligation requires introducing that writing. Ascension Builders, Inc. v. Jumonville, 263 So.2d at 878; Sudds v. Protective Casualty Insurance Company, 554 So.2d at 151. A jurisprudential exception is that when the plaintiff requests admissions of contractual coverage or production of the policy, the defendant's failure to comply may be construed as supplying the missing proof. Sudds v. Protective Casualty Insurance Company, 554 So.2d at 151. See Succession of Rock v. Allstate Life Insurance Company, 340 So.2d at 1329.
In his petition, Travis alleged that, at all times pertinent hereto, "Commercial Union Insurance Company, had in full force and effect a policy of liability insurance covering Marcel DeLeebeck, d/b/a Joe's Stop-N-Shop, insuring against losses of the nature sustained...." Travis also filed a request for production of the insurance policy and a request for admissions. Travis requested admission of the following facts:
1. That the copy of the policy produced in connection with the request for production of documents herein is a genuine and authentic copy of the original.
2. That the vehicle being used by petitioner at the time of the accident was not a vehicle regularly used in the business of Joe's Stop-N-Shop.
3. That the vehicle was being used by Mr. Travis to assist Mr. DeLeebeck in moving his bait machine from his place of business.
4. That said bait machine was being moved by Mr. Travis at the request of Mr. DeLeebeck.
5. The bait machine being moved at the time of this accident was connected with the business known as Joe's Stop-N-Shop.
Commercial Union did not answer Travis' petition, nor did it respond to his requests for production and for admissions.
In establishing his prima facie case at the confirmation hearing, Travis sought to establish insurance coverage under a policy of insurance allegedly issued by Commercial Union by introducing into evidence "Plaintiff's Exhibit # 1" (P-1) and "Plaintiff's Exhibit # 4" (P-4).
P-1 is entitled "General Liability Loss Notice (other than automobile)." This exhibit shows that Commercial Union issued a liability policy to Joe's Stop-N-Shop, effective September 10, 1987, and that coverage expired on December 31, 1987. P-1 also reveals the liability and medical payment limits of $1 million and $25,000.00, respectively. The loss notice is dated January 15, 1988, and is signed by B.K. King, whom Travis identified as "the agent through Gar Insurance for Commercial Union."
P-4 is correspondence from Commercial Union's claims department to which two pages of the policy were attached. The letter provided, in pertinent part, as follows:
Please find enclosed the applicable pages from our Concept One Policy that exclude this claim. This policy does not cover any bodily injuries arising out of the ownership, maintenance, operations, use, loading or unloading of any automobile operated by, rented to, or loaned to any insured.

This policy under medical payments does not cover medical expense from bodily injury arising out of the use of non-owned automobiles or hired vehicles. Therefore, we will be unable to honor any claim for your client.
If suit is filed in this case we will deny coverage and we do have the duty to defend our insured. (Emphasis added).
The attached portions of the policy set forth the liability insurance provisions regarding coverage and exclusions. The first *119 page of the attached policy bears the name "Commercial Union Insurance Company" and the coverage form number G10404. Along with other similar denominations, G10404-1 also appears on the "General Liability Loss Notice" under the heading "policy information." With regard to coverage, the attachments provided as follows:
A. WHAT IS COVERED
The following coverages apply only when caused by an occurrence insured by this policy and not otherwise excluded:
1. BODILY INJURY AND PROPERTY DAMAGE LIABILITY. We cover all sums which the insured is legally required to pay as damages because of bodily injury or property damage.

2. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY. We cover all sums which the insured is legally required to pay as damages because of personal injury or advertising injury committed in the course of your business.
3. MEDICAL EXPENSES. We cover all reasonable medical expenses incurred as a result of bodily injury sustained by any person because of an accident arising out of your business operations or a condition in the insured premises. The medical expenses must be incurred within one year of the accident date. We will pay these medical expenses whether or not you are legally responsible for the accident.
Commercial Union contends that this evidence was insufficient to establish coverage. Commercial Union reasons that portions of the policy and correspondence regarding coverage are insufficient to establish coverage and that the entire policy must be introduced, citing Cowell v. Dairyland Insurance Company, 399 So.2d 701 (La.App. 1st Cir.1981) and Holland v. Aetna Life & Casualty Insurance Co., 385 So.2d 316 (La.App. 1st Cir.1980).
Commercial Union's reliance on these cases is clearly misplaced. Cowell dealt with uninsured motorist insurance, and the insured, in attempting to establish coverage under his own insurance policy, introduced only the declarations portion of the policy. Further, and more importantly, the insured, while establishing the negligence of the other driver, failed to establish through competent evidence that such driver was uninsured. In Holland, plaintiff did not introduce the insurance policy or any portions thereof, but attempted to establish coverage through letters written by counsel for the plaintiff directed to the insurance company. The court determined that, in addition to other deficiencies in the plaintiff's case, the letters did not constitute competent evidence of proof of the insurance contract.
In the instant case, the record reveals that the requests for admissions, which are deemed admitted because of Commercial Union's failure to deny, are insufficient to establish a contract of insurance. However, the "General Liability Loss Notice" together with the correspondence from Commercial Union, acknowledging the existence of the policy and attaching the relevant portions of the policy regarding coverage, constitute sufficient proof of insurance coverage. See Arsenault v. Gulf States Utilities Company, Inc., 482 So.2d 695 (La.App. 1st Cir.1985). Additionally, the facts, established through the testimony at the confirmation hearing, reveal that Travis was injured while attempting to move equipment used in the business of Joe's Stop-N-Shop, i.e. "personal injury committed in the course of your business." Furthermore, Commercial Union does not contend that the portions of the policy introduced into evidence as P-4 are not portions of a liability policy issued by Commercial Union.
Therefore, we find that Travis established sufficient proof of the insurance contract and coverage thereunder, unless one of the exclusions is applicable.

APPLICABILITY OF EXCLUSIONS
The Commercial Union policy provides, in pertinent part, as follows:
Coverage does not apply to bodily injury or property damage arising out of *120 the ownership, maintenance, operation, use, loading or unloading of:
A. Any automobile, aircraft or watercraft owned or operated by, or rented or loaned to, any insured; or
B. Any other automobile, aircraft or watercraft operated by a person in the course of his employment by any insured.

Commercial Union argues that Travis loaned the truck to DeLeebeck, and, as a result, the policy did not extend coverage for Travis's injuries. In support of this position, Commercial Union relies on McDaniels v. Great Atlantic & Pacific Tea Company, 602 F.2d 78 (5th Cir.1979).
McDaniels, however, was severely criticized in Sturgeon v. Strachan Shipping Company, 731 F.2d 255 (5th Cir.1984), cert. denied, 469 U.S. 883, 105 S.Ct. 251, 83 L.Ed.2d 188 (1984). In Sturgeon, the court interpreted a comprehensive general liability policy exclusion nearly identical to the one contained in the Commercial Union policy[1] and set out guidelines regarding a determination of "borrowed" status, as follows:
Control of a movable object intrinsically involves power to govern its location. In the instance of a vehiclean object whose purpose is to provide transportation'control' of the vehicle during any given period must include power to move it during that space of time. Thus, to have control of a vehicle during loading/unloading one must have the power to move the vehicle during the loading/unloading process itself.
731 F.2d at 260.
The court in Sturgeon further noted that "borrow is the correlative of loan" and "more precisely, that the two terms in these standard insurance clauses must be construed in a complementary fashion."
In the instant case, the trial judge, in his written reasons for judgment, determined that "[p]laintiff used the truck he owned to assist DeLeebeck in closing his business. He did not loan the truck to DeLeebeck for his use."
We have carefully reviewed the entire record and find that the record amply supports this determination. The uncontradicted testimony reveals that DeLeebeck asked Travis to assist him in moving the bait machine and that Travis drove his truck to DeLeebeck's business to comply with this request. Travis testified that he did not lend DeLeebeck his truck nor did DeLeebeck drive the truck. While admittedly, DeLeebeck was in charge of the loading process, the power to control the vehicle during this loading process remained with Travis. Under the test set forth in Sturgeon v. Strachan Shipping Company, the vehicle was not loaned to DeLeebeck (the insured), and, as such, coverage was not excluded.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed against Commercial Union.
AFFIRMED.
NOTES
[*] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.
[1] In Sturgeon, the policy excluded coverage for:

[B]odily injuryarising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobileowned or operated by or rented or loaned to any insured but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured.