PAUL A. BONIN, Judge.
pin this personal injury suit, Jessica Goldfinch obtained a judgment by default against United Cabs, Inc. (“United Cabs”). The trial court denied United Cabs’ motion for new trial. This suspensive appeal followed. For the reasons which follow, we reverse the trial court and remand the matter for a new trial.
Background of proceedings. Ms. Goldfinch filed suit against United Cabs, Imperial Adjustment Corporation d/b/a/ “Imperial Fire and Casualty” and Academy Insurance Agency, Inc.,[1] on October 7, *1176 2002, claiming that she was injured while a passenger in a United taxicab. United Cabs was served on November 21, 2002, and referred the lawsuit to its insurer, Imperial Fire and Casualty Company. Nothing further happened in the lawsuit until Ms. Goldfinch filed a series of preliminary defaults against the named defendants, including United Cabs, on April 27, 2005. On April 23, 2008, the trial court conducted an evidentiary hearing to confirm the preliminary default against United Cabs, Inc., hand Imperial Adjustment Corporation d/b/a Imperial Fire & Casualty, and it rendered judgment on May 5, 2008, confirming the default.
As soon as United Cabs was served the notice of judgment, it timely moved for a new trial. The trial court denied the motion on June 6, 2008, concluding that United Cabs had “ample opportunity over the five plus years this suit was pending to learn of its existence and to plead any and all defenses.”[2]
General factual background. Ms. Goldfinch testified that she and three friends were passengers in an otherwise unidentified United Cabs taxicab on the night of March 7, 2002. After two of her friends had been dropped off, the unidentified and undescribed cab driver slammed on the brakes, which action caused Ms. Goldfinch to fall forward and strike her face on the rear of the driver’s seat. Her face became covered with blood. The cab driver then ordered the two passengers out of the cab. Ms. Goldfinch and her friend[3] walked seven blocks to her home.
The next morning, Ms. Goldfinch presented herself to the student health clinic at the University of New Orleans. She says that the nurse referred her to the emergency room at Charity Hospital. At Charity a CT scan and x-rays were taken. She was referred to a specialist. Ms. Goldfinch began to experience headaches.
On July 2, 2002, a septorhinoplasty surgery was performed at Charity on Ms. Goldfinch to repair a deviated septum. She continued to suffer headaches and [3was treated by Dr. Dennis Casey. At the time of the confirmation hearing on April 23, 2008, Ms. Goldfinch’s nose was still tender and she experienced headaches about twice a month. The trial court’s judgment awarded her $20,000 in general damages and $8,622.25 in special damages.[4]
Assignments of error. United Cabs argues on appeal that the trial court erred as a matter of law in denying the motion for new trial because the judgment in Ms. Goldfinch’s favor was “clearly contrary to the law and the evidence.” La. C.C.P. art.l972(l). United Cabs argues that the evidence introduced against it was not legally sufficient to support the judgment. Ms. Goldfinch responds that her evidence was legally sufficient. United Cabs alternatively argues that the trial court abused its discretion in not granting it a new trial because “there is good ground therefor.” La. C.C.P. art.1973. It contends that its *1177 referral of the lawsuit to its liability carrier, which Ms. Goldfinch had also sought to join as a defendant, and its reasonable belief that the liability carrier was responding to the lawsuit, constitutes the “good ground” for the granting of a new trial, especially since the court granted a new trial to the insurer. Ms. Goldfinch argues that the trial court’s refusal to grant a new trial on that ground does not constitute an abuse of the trial judge’s discretion. Importantly, the parties agree that the default judgment was procedurally proper.
|4I. The Law Requires Sufficient Evidence to Support a Default Judgment.
The Louisiana Supreme Court in Arias v. Stolthaven New Orleans, L.L.C., 08-1111, pp.5-8(La.5/5/09), 9 So.Sd 815, 818-820 stated the law applicable to a review of the evidence offered to support a judgment of confirmation of a default:
The appellate jurisdiction of courts of appeal extends to both law and facts. La. Const, art. V, § 10(B). A court of appeal may not overturn a judgment of the trial court absent an error of law or a factual finding that was manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Transp. And Development, 617 So.2d 880, 882, n. 2, (La.1993). When the court of appeal finds that a reversible error or manifest error of material fact was made in the trial court, it is required to re-determine the facts de novo from the entire record and render judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment, [citation omitted]. This determination is a factual one governed by the manifest error rule, [citation again omitted].
Confirmation of a default judgment is similar to a trial and requires, with admissible evidence, “proof of the demand sufficient to establish a prima facie case.” La. C.C.P. art. 1702(A); Power Marketing Direct[, Inc. v. Foster], 05-2023 at p. 10[(La.9/6/06)], 938 So.2d [662] at 670; Maraist, supra, at 452-453. The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993); Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La.1989). In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at trial on the merits. Thibodaux, 538 So.2d at 1004. A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim. A default judgment cannot be different in kind from what is demanded in the petition and the amount of damages must be proven to be properly due. La. C.C.P. art. 1703.
At the hearing, the rules of evidence generally apply. La. C.E. art. 1101(A); Maraist, supra, at 452^53. The plaintiff must follow |sthe rules of evidence even though there is no opponent. “Because at a default confirmation there is no objecting party, to prevent reversal on appeal, both plaintiff and the trial judge should be vigilant to assure that the judgment rests on admissible evidence” that establishes a prima facie case. George W. Pugh, Robert Force, Gerald A. Rault, Jr., & Kerry Triche, Handbook on Louisiana Evidence Law 677 (2007). Thus, inadmissible evidence, except as specifically provided by law, may not support a default judgment even though it was not objected to *1178 because the defendant was not present. 19 Frank L. Maraist, Civil Law Treatise: Evidence and Proof § 1.1, at 5 (2d ed.2007).
There is a presumption that a default judgment is supported by sufficient evidence, but this presumption may be rebutted by the record upon which the judgment is rendered. Ascension Builders, Inc. v. Jumonville, 262 La. 519, 527, 263 So.2d 875, 878 (1972).... (emphasis added.)
An exception to the general rule of inadmissible evidence is found at La. C.C.P. art. 1702(B)(1), which instructs the court on what kind of evidence in a tort case may be used to establish a prima facie case:
When a demand is based upon a delic-tual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits attached thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
La. C.C.P. art. 1702(D) further expressly provides that “[w]hen the demand is based upon a claim for personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.” Certified medical records and bills are also admissible evidence in a confirmation of default in support of establishing a prima facie case. La. R.S. 13:3714(A):
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A), certified or attested to by the state health care provider or the private health care provider, is offered in | ¡¡evidence by such court as pri-ma facie proof of its contents, provided that the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.
See also, Arias v. Stolthaven New Orleans, L.L.C., 07-0650, pp. 12-15 (La.App. 4 Cir. 3/19/08), 980 So.2d 791 at 801-803, reversed on other grounds, Arias v. Stolthaven New Orleans, L.L.C., 08-1111 (La.5/5/09), 9 So.3d 815, 818,
These special legislative provisions relax the general rule as to the inadmissibility of hearsay. La. C.E. arts. 801(A) and 802. Unless one of these exceptions applies, hearsay evidence does not constitute competent evidence to establish a prima facie case.
A plaintiff who seeks to present evidence to confirm a default judgment based on his or her personal injury must introduce sufficient evidence to prove both a causal connection and the quantum of damages between the tortious event and the injuries. Hall v. Folger Coffee Co., 02-0920, p. 20 (La.App. 4 Cir. 10/1/03), 857 So.2d 1234, 1248. We, therefore, evaluate the evidence offered by the plaintiff to determine whether it is competent evidence.
II. The Evidence
A. Inadmissible Medical Evidence
Ms. Goldfinch reports that she was treated by three separate health care *1179 providers or facilities: the UNO student health clinic, Charity Hospital and its physicians, and Dr. Casey. Ms. Goldfinch, however, did not introduce live testimony, sworn affidavits, or certified medical records from the practitioner at the UNO clinic or from Dr. Casey. She introduced an unsworn report from Dr. 17Casey.[5] Therefore, both health care providers’ evidence is not admissible and must be disregarded in determining whether a prima facie case has been established. Ms. Goldfinch relies upon Dr. Casey’s report to establish that she had no history of nasal problems before the date of the incident and to further establish that the septorhi-noplasty was a required surgery. This report is hearsay and cannot be used to establish a prima facie case unless it meets one of the exceptions of La. C.C.P. art. 1702(B)(1) or 1702(D). Article 1702(B)(1) would allow the report if it were attached to the physician’s affidavit, and article 1702(D) would allow the report if it were “a sworn narrative report.” (emphasis added) We, therefore, are compelled to exclude this unsworn report from evaluating whether Ms. Goldfinch has established a prima facie case.
B. Admissible Evidence: Medical Records and Bill of Charity Hospital
The certified medical record of Charity Hospital is the only acceptable medical evidence in this case. Although Ms. Goldfinch testified that she was treated at Charity Hospital on March 8, 2002, the certified medical records do not corroborate or substantiate this claim. The earliest dated record is June 27, 2002, which is an adult admission request form. The billing record, which is included, begins with the date of June 28, 2002.[6] The operative report for the surgical repair of Ms. Goldfinch’s deviated septum on July 2, 2002, stated that the procedure was for the “correction of a nasal obstruction,” and stated that she suffered a nasal trauma in March 2002, with no further elaboration linking the surgery to the injuries sustained in the United Cab incident.
|sMs. Goldfinch attached as an exhibit five photographs she took of herself, in which a clock is in the background; the clock does not provide the date, just the time. Ms. Goldfinch testified that she took these photographs the day after she visited the emergency room.
C. Ms. Goldfinch’s Testimony Purged of Hearsay
We have reviewed the transcript and excised from Ms. Goldfinch’s testimony that material which is inadmissible. As edited, her testimony in support of her claim is as follows. Ms. Goldfinch testified that in the late evening of March 7, 2002, she and three friends called a cab, identified as a United cab, to take two friends to one location; then she and the fourth person, Charlie, were to be taken about fifteen blocks further, to her house. The driver drove “really jerky” and, as she was picking up her purse to look for money for the cab fare, the driver “slammed on the brakes really hard, and I just like fell forward and hit my face on the back of the seat.” After the driver resumed driving, after a block or so, he stopped the cab. She and Charlie in response to instructions *1180 got out. Ms. Goldfinch’s face was bleeding, and Charlie tried to help her. They paid the driver, then walked six or seven blocks to Ms. Goldfinch’s house, and she went to sleep. The next morning Ms. Goldfinch saw her swollen face, felt pain and nausea, and went to the UNO student health clinic, and later went to Charity Hospital’s emergency room.[7] She testified that she underwent a CT scan and x-rays at Charity Hospital.[8] She scheduled a surgical procedure that would remove the | flobstruction to her breathing. She claimed to have severe headaches and nausea, and denied having headaches prior to the incident. She underwent the elective outpatient nasal surgery on July 2, 2002, after having trouble breathing, bad headaches, and a rubbery feeling in her nose during the four-month waiting period.
After the surgery performed at Charity Hospital, Ms. Goldfinch’s nose was tender for “quite a while,” “a couple of most months.” She continued to have headaches, “even still.” She saw Dr. Casey in August 2005, complaining of headaches.[9] She had started wearing reading glasses, and opined that “that spurred the headaches again.” She filled a prescribed medication, which she said did not help. She testified that as of 2008, when she testified, she has headaches once or twice a month, and avoids touching her nose or resting anything, like glasses, on it.
III. The Presumption Arising From Ms. Goldfinch’s Failure to Introduce Corroborating Evidence
According to Ms. Goldfinch, three other passengers were with her in the taxicab at the outset of the trip, one of whom, Charlie, remained with her in the cab at the time of the incident. She did not introduce live testimony or sworn affidavits of any of these witnesses. “The unexplained failure of a party to call a witness who possesses peculiar knowledge of material facts pertinent to the resolution of the case entitles the opposing party to a presumption that the witness’s testimony would be unfavorable.” Arnone v. Anzalone, 481 So.2d 1047, 1050 (La.App. 1st Cir.1985). “It is well established that such a presumption is available in this state [citations omitted].” Morgan v. Matlack, 366 So.2d 1071, 1073 (La.App. 1st Cir. |1979),[10] writ denied, 369 So.2d 1352 (La. 1979); Lavigne v. Oechsner, 519 So.2d 870, 871 (La.App. 4th Cir.1988). In Ryder v. DHHR, 400 So.2d 1123, 1126 (La.App. 1st Cir. 1981), the First Circuit stated:
It should ... be noted that, in discharging its burden of proof, the authority failed to call three other witnesses who were present at this incident. Because their testimony would logically be part of the authority’s case, and their failure to testify being unexplained, it must be presumed that their testimony would not have aided the authority’s case.
Because of Ms. Goldfinch’s unexplained failure to introduce any corroborative evidence from any, or all, of her eo-passen-gers, we presume that their testimony would have been unfavorable to her.
IV. DISCUSSION
We find that the record does not contain sufficient evidence to prove a pri- *1181 ma facie case to support the judgment of default. The contents of the unsworn report of Dr. Casey are the glue between Ms. Goldfinch’s description of her injuries and the medical causation. The trial court erred in admitting the unsworn report of Dr. Casey. Without the contents of Dr. Casey’s report, we are unable to conclude de novo from admissible evidence that Ms. Goldfinch’s surgery in July 2008 was caused by the taxicab incident or that it was medically necessary. Her evidence contained no recommendation from a physician that her “elective” surgery on her nose four months later was recommended or required in order to treat or correct injuries sustained in the taxicab incident. Meshell v. Russell, 589 So.2d 86, 88-89 (La.App. 2d Cir.1991) (wherein the record was held insufficient to support confirmation of a default judgment when it did not include narrative report of treating physician or his testimony or proof that medical expenses were medically necessary).
| r. Moreover, while her testimony about the incident itself might ordinarily be sufficient to establish, however weakly, that she was injured due to the fault of the taxi driver, her unexplained failure to introduce the testimony of her eyewitness, Charlie, materially detracts from her own testimony, albeit uncontradicted. The compounded unexplained failure to introduce any corroborating testimony from the other passengers, at least to support that the incident occurred in a United cab, dilutes further the value of Ms. Goldfinch’s testimony.
Accordingly, we find that the trial court was manifestly erroneous in concluding that Ms. Goldfinch proved a prima facie case to support the judgment by default. The judgment was, therefore, contrary to the law and the evidence, and a new trial should have been granted by the trial court.
Because we decide the appeal on the basis that the evidence was insufficient to support the judgment, we need not review further United Cab’s second assignment of error that the trial court abused its discretion in failing to grant a new trial on the discretionary basis of “good ground therefor.” [10]
DECREE
For the reasons set forth above, we reverse the trial court’s confirmation of the default judgment against United Cabs, Inc., and the denial of its motion for new trial. We remand the case to the trial court for further proceedings.
REVERSED AND REMANDED.
BELSOME, J., dissents with reasons.

. Ms. Goldfinch incorrectly named and cited the liability insurer of United Cabs, Inc., i.e., Imperial Adjustment Corporation d/b/a/ Imperial Fire and Casualty. Imperial's motion for new trial was granted on August 14, 2008, and is not before this court. Academy Insurance Agency, which is not an insurance company, filed an exception of no cause of action *1176 and an answer to the petition, and is not before this court.

.The trial court granted a new trial and set aside the default judgment as to the improperly named and cited Imperial Adjustment Corporation d/b/a Imperial Fire and Casualty Company because the judgment against it was “clearly contrary to the law and the evidence.'' La. C.C.P. art,1972(l).

. This friend is identified in Ms. Goldfinch's testimony only as "Charlie.”

. The original judgment awarded $38,622.25, but the later judgment corrected an error in calculation. La. C.C.P. art.!951(2).

. Nothing in Dr. Casey's unsworn report contains any certification by him that the report is "true and correct”: see, Bordelon v. Sayer, 01-0717, p. 5 (La.App. 3 Cir. 3/13/02), 811 So.2d 1232, 1236.

. Charity Hospital’s billing was for $8,622.25, which is the exact amount of the special damages award. There is no evidence of a bill from Dr. Casey or of any charges for prescriptions.

. The record does not include any documentation of the visit to the UNO student health clinic.

. The Charity Hospital records do not include these test results or bills therefor. The record does not have documentation of the visit to Charity on or about March 8, 2002 or any subsequent visit until the outpatient surgery preparation and procedure.

.The record does not include any bill for Dr. Casey’s services, nor does it include copies of the prescription medication and invoices for it from any pharmacy.

. We note that the holding of the Second Circuit in Meshell, supra at 89, also addressed appellate review of the discretionary ground under La. C.C.P. art. 1973 ("New trials are granted in the interest of justice ... [W]e are especially careful to review denials of new trials in cases of default judgments due to the general policy consideration, weighing in defendant's favor, that every litigant should be allowed his day in court.”)