626 So.2d 28 (1993)
RAZORBACK OIL TOOLS INTERNATIONAL, INC. and Roscoe B. Smith
v.
TAYLOR OIL TOOLS COMPANY and William T. Taylor.
No. 92 CA 1708.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
*29 Bernard F. Levy, Houma, for plaintiff and appellant, Razorback Oil Tools et al.
Robert Picou, Guy Matthews, Houma, for defendants and appellees, Taylor Oil Tools et al.
William W. Stagg, Lafayette, for Taylor Oil Tools Co., et al.
Before WATKINS, SHORTESS and FOGG, JJ.
WATKINS, Judge.
In this breach of contract suit, the trial court rendered judgment in excess of $15 million on a reconventional demand. Finding merit in appellants' contention that the court erred in failing to grant a new trial, we reverse and remand.
On September 11, 1990, Razorback Oil Tools International, Inc. (Razorback) and Roscoe B. Smith filed suit against William T. Taylor and Taylor Oil Tools Company (Taylor Tools). The petitioners alleged that on April 4, 1988, Mr. Smith and Mr. Taylor entered into an agreement for Mr. Smith to buy from Mr. Taylor certain patents, patent applications, designs, drawings, and product inventions (referred to as "tools"), as well as trade secrets of certain unpatentable tools. The seller, Mr. Taylor, agreed "[t]o oversee all research and development, engineering, the filing of patent applications, the building and testing of proto-types"; to make himself available on a full-time basis for further duties until such time as the buyer was producing the tools; and to perform the obligations without the payment of salary to him. The buyer, Mr. Smith, agreed to commence production within six months or as each of the tools became available, "[t]o pay all legal and agent expenses on all patent applications, renewals and maintenance"; to market the tools worldwide on a "best effort" basis; and to defend against all patent infringements from any other party. The purchase price stated in the agreement was $650,000.00, which was to be payable on a scheduled time payment.[1] However, the agreement contained the provision that the full balance of the purchase price would be paid when the buyer became "financially capable." In addition to the purchase price, the buyer agreed to pay to the seller a royalty of seven percent of gross revenues for sales of the tools during the life of the patents. The petition continues to allege that Mr. Taylor breached the agreement by failing, since approximately May of 1990, to undertake and fulfill the agreed-upon duties.
*30 The petitioners further alleged that on August 25, 1989, Razorback entered into an exclusive license agreement with Mr. Taylor and Taylor Tools for Mr. Taylor and Taylor Tools to market wireline, coil tubing, and snubbing fishing tools manufactured by Razorback. Petitioners claimed certain tools were manufactured and delivered, but not paid for; they demanded payment of balances of $4,000.00 and $55,338.75, on tools delivered to Taylor Tools, as well as payment of $37,825.00 for tools ordered by Mr. Taylor and not delivered.
On February 15, 1991, Mr. Taylor and Taylor Tools filed an "amended original answer and counterclaims." On July 18, 1991, a court order was issued setting a bench trial for September 9, 1991, which date was later changed to September 26, 1991. On August 28, 1991, Michael D. Carbo and Jerry H. Schwab filed a motion to withdraw as counsel for Mr. Smith and Razorback.[2] The trial judge, absent objection by counsel for Mr. Taylor, granted Mr. Schwab's motion to withdraw. In denying Mr. Carbo's motion to withdraw, the court stated, in pertinent part:
The record in this case establishes that Mr. Carbo has represented the plaintiffs since this action was originally filed on September 11, 1990. The Motion to Withdraw was filed on August 12, 1991, exactly five months after counsel last spoke with his client and, more significantly, less than a month before the original trial date of September 9, 1991. Under these circumstances, allowing counsel to withdraw from the case at this time will be prejudicial to both his clients and defendants.
On September 26, 1991, counsel for Mr. Smith and Razorback filed several exceptions, including a declinatory exception of insufficiency of service of process on the ground that service of the amended answer and counterclaims was not made by the sheriff but was attempted by certified mail to the attorney of record for Razorback and Mr. Smith. The issue of insufficient service of process became moot when Mr. Carbo and counsel for Mr. Taylor agreed to a continuance, the trial was continued to February 3, 1992, and Mr. Taylor and Taylor Tools were able, during the interim, to refile their answer and counterclaims (reconventional demands) and obtain proper service on counsel of record.
The other exceptions filed on September 26, 1991, were denied by the trial court.[3]
On January 10, 1992, with no answer having been filed to the reconventional demands, counsel for Mr. Taylor took a preliminary default.
On January 29, 1992, Mr. Carbo filed another motion to withdraw as counsel, explaining that he had succeeded in making telephone contact with Mr. Smith in Dubai, United Arab Emirates, only on January 21, 1992. Immediately after the telephone conference, Mr. Carbo faxed to Mr. Smith the documents containing the demands of Mr. Taylor. The following day, Mr. Carbo confirmed by telephone that Mr. Smith had received and reviewed the documents, including the notice of trial for February 3, 1992. Mr. Carbo informed Mr. Smith that he was withdrawing as attorney of record for both Mr. Smith and Razorback. On January 30, 1992, absent objection by counsel for Mr. Taylor, the trial court granted Mr. Carbo's motion to withdraw as counsel of record. However, before withdrawing, to fulfill his duty to his clients, Mr. Carbo filed another motion to continue the trial, which was denied by the court, and filed several exceptions on behalf of Mr. Smith and Razorback.
On February 3, 1992, the matter was called for trial. Neither Mr. Smith nor a representative for him was present. Prior to hearing testimony on the confirmation of the default, the trial court overruled the exceptions *31 filed on January 30, 1992, observing that they were the same exceptions that had been considered on September 26, 1991.[4]
To confirm the default against Razorback and Mr. Smith, counsel for Mr. Taylor presented the testimony of the following witnesses: Mr. Taylor, Yvonne Taylor, Mark Taylor, Mark Fanguy, Don Owens, Steve Matherne, Terry Blanchard, and Robert L. Picou. Exhibits numbers 1 through 121, contained in counsel's trial book, were entered into evidence. Counsel specifically sought and received permission of the court to enter the copies of the promissory notes contained in the trial book in lieu of the originals. After hearing the testimony, the trial judge rendered judgment in open court against Razorback and Mr. Smith "as prayed for." Thereafter, the court signed a judgment on February 14, 1992, the various parts of which will be discussed hereinafter.
On February 26, 1992, Mr. Bernard F. Levy filed a motion to be enrolled as attorney of record for Razorback and Mr. Smith; at the same time he filed a motion for new trial on behalf of both Razorback and Mr. Smith. By judgment rendered May 15, 1992, and signed on May 20, 1992, the trial court denied Razorback's motion for new trial.[5]

NEW TRIAL
The pertinent Louisiana statutory provisions for granting a new trial are as follows:
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. LSA-C.C.P. art. 1973.
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence. LSA-C.C.P. art. 1972(1).
After having reviewed the lengthy list of appearances and filings in the trial court, as well as the evidence presented for the confirmation of default, we conclude that there was good ground for a new trial and that the judgment was contrary to the law and the evidence. We reach this conclusion for two reasons. First, the trial court abused its discretion in failing to grant a continuance of the February 3, 1992 trial date in light of the prejudice to the defendants-in-reconvention stemming from belated communication between Mr. Smith and his counsel. Second, the judgment contains numerous substantive errors, including portions that are not based on sufficient and competent evidence, which we will detail hereinafter.
We find no fault with the trial court's decision on January 30, 1992, that Mr. Carbo was entitled to withdraw as attorney of record. However, we find that the failure of the trial court to grant a continuance of the trial that was set for February 3, 1992, was unreasonable and highly prejudicial to the defendants-in-reconvention. The scheduled trial date was merely 13 days after Mr. Carbo succeeded in communicating with his client and merely four days after permission to withdraw was granted. January 21, 1992, was the first time Mr. Smith actually received a copy of the properly served pleadings. It is elementary that one purpose of the requirement of service of all pleadings, even if by mail and even if by service on the attorney of record, is to insure that the parties are apprised of the status of the action. Meshell v. Russell, 589 So.2d 86 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La. 1992). Inherent in the statutory provision *32 allowing for service on the attorney of record is the assumption that the attorney will communicate with his or her client. LSA-C.C.P. art. 1313 and art. 1314. At the time of Mr. Carbo's withdrawal, the trial court should have been thoroughly aware of the serious legal issues in the case, as well as the substantial dollar amounts involved, in light of the arguments made at the hearings on the exceptions in September of 1991. Indeed, the court's refusal to continue the 1992 trial was inconsistent with the court's determination in September of 1991 that allowing Mr. Carbo to withdraw less than a month before the scheduled trial would be prejudicial to his clients.
The magnitude of the judgment rendered and the substantive errors in the judgment illustrate the prejudice that Mr. Smith suffered in having insufficient time to hire new counsel to represent him and defend against the reconventional demand. Accordingly, we conclude that the trial court abused its discretion in failing to grant a new trial based upon the "good ground" that a continuance of the February 3, 1992 trial should have been granted. LSA-C.C.P. art. 1973.
Additionally, other problems exist which require our reversal of the denial of the motion for new trial. We have recently explained the standard of review we must use when a default judgment is being appealed. In Travis v. Commercial Union Ins. Co., 569 So.2d 115, 117 (La.App. 1st Cir. 1990), we stated:
(T)he presumption that the default judgment was rendered upon sufficient evidence and is correct does not apply where the testimony is transcribed and is contained in the record. (Citations omitted.)
In such a case, the reviewing court is able to determine from the record whether the evidence on which the judgment is based was sufficient and competent. (Citations omitted.)
Accordingly, we shall examine various portions of the judgment rendered on confirmation of default and the evidence presented in support thereof.
First, the judgment provides that Mr. Smith and Razorback Oil Tools International, Inc. breached the April 4, 1988 agreement. This conclusion is inaccurate because Razorback Oil Tools International, Inc. was not a party to the April 4, 1988 agreement; Mr. Smith and Mr. Taylor, individually, were the sole signatories.
Second, in light of the breach of contract, the judgment decreed William T. Taylor and Taylor Oil Tool Company to be the owners of the patents covered by the agreement, but the judgment also attempted to award the purchase price.[6] The effect of a dissolution of a sale is to place matters in the same state as though the obligation had not existed; the vendor gets the property back, and the vendee is discharged from the obligation to pay the price, even being entitled to a return of the portion of the price he may have paid. Sliman v. McBee, 311 So.2d 248 (La.1975). Thus, the prevailing plaintiffs-in-reconvention could have been entitled to a judgment for a return of the patents or for the payment of the purchase price, but not both. The judgment in the instant case is erroneous because it allows Mr. Taylor double recovery.
Third, the judgment declares a $40,000.00 promissory note dated May 8, 1981, to be in *33 default, and in payment thereof makes an award of "the full sum of $81,380.82 with 10% interest thereon from August 5, 1981 together with attorney fees in the amount of 10% of the principal and interest due and owing." The award is apparently based on a chart of promissory notes and invoices prepared by Terry J. Blanchard, certified public accountant, which chart was entered into evidence as Exhibit 120B. We note that Mr. Blanchard reported that the interest on the $40,000.00 note as of September 9, 1991, amounted to $41,380.82 and that the total principal and interest due was $81,380.82. The judgment is erroneous on its face, as it awards the amount calculated for the total of principal and interest, plus 10% interest from August 5, 1981.[7] Furthermore, the note is prescribed on its face, and the trial court did not consider the exception of prescription filed on behalf of the alleged maker of the note.[8] At a new trial, the makers will have the opportunity to urge their exception of prescription.
Fourth, the judgment declares the $345,000.00 note dated November 2, 1980, in default, but awards $828,509.59, the total amount of principal and interest listed on the Blanchard chart for the 1988 note of $650,000.00, plus 9% interest from April 4, 1988. The 1980 note does not provide for interest, and there is no justification for an award of interest from the date of the 1988 note. The 1980 note also is prescribed on its face, and our previous discussion regarding the exception of prescription applies to this note. Furthermore, a judgment against Roscoe B. Smith personally on the 1980 note is contrary to the evidence consisting of the copy of the note that shows a signature by him solely in his capacity as president of "Razorback Oil Tools, Inc."
Fifth, the plaintiffs-in-reconvention were awarded $1,500,000.00 in (compensatory) damages, $4,500,000.00 in punitive damages, and $100,000.00 in attorney's fees for violation of the Louisiana Uniform Trade Secrets Act by the defendants-in-reconvention. The evidence does not support such an award. The 1988 agreement was for the purchase and sale of patents and trade secrets, whereby Mr. Taylor voluntarily revealed his trade secrets to Mr. Smith. Even if we assume that Mr. Taylor proved that Mr. Smith breached the agreement by not paying for the patents before using the tools overseas, we cannot infer that Mr. Smith's actions amounted to a violation of the Louisiana Uniform Trade Secrets Act (UTSA), LSA-R.S. 51:1431 et seq. The rationale of McPhearson v. Shell Oil Co., 584 So.2d 373 (La.App. 4th Cir.1991), is applicable here. In that case the plaintiff designed and installed on defendant's offshore rig an auger system, which he later claimed to have "invented." The court held that the plaintiff did not avail himself of the protection afforded by the UTSA because he voluntarily assembled the system for defendant with no thought of keeping it secret. Thus, the court held, the auger system was no longer plaintiff's to lease or sell to defendant or anyone else. Likewise, the trade secrets sold to Mr. Smith by Mr. Taylor were no longer Mr. Taylor's secrets under the provisions of the UTSA. Considering the evidence presented, we find that Mr. Taylor is not entitled to judgment for violation of the UTSA.
There are other provisions and awards contained in the judgment, but we will not continue with a list of them. Suffice it to say that the parts of the judgment contrary to the law and the evidence are so numerous as to undermine the integrity of the remainder of the judgment; it would be unfair to attempt to distinguish between the correct and the incorrect parts. The trial court should have granted a new trial as to all issues.[9] Likewise, the original demand of Mr. Smith *34 and Razorback is inextricably intertwined with the affirmative defenses included in the reconventional demand; in our opinion justice can be done only by granting a new trial on both the original and the reconventional demand.
Accordingly, we reverse the judgment of the trial court denying the motion for new trial of Razorback Oil Tools, Inc., we cast appellees for costs of this appeal, and we remand the case to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The schedule for payment was amended several times by subsequent agreements.
[2] The motion stated that counsel had not been able to communicate with Mr. Smith or anyone else representing Razorback since a telephone conversation on March 12, 1991, when counsel was informed that Mr. Smith was going to the Middle East. Thereafter, Mr. Carbo attempted communication by telephone and mail, but he was unsuccessful.
[3] In summarily denying these exceptions, the trial court stated: "You know, perhaps if these exceptions were filed earlier and the Court had time to study and have briefs on each side, the Court would rule differently. But this is the morning of the trial and I don't want to sound like I'm just passing over it, but I guess you could say I am."
[4] The exceptions considered on September 26, 1991, were: insufficiency of service of process; lack of jurisdiction over the person; lack of subject matter jurisdiction; nonconformity with LSA-C.C.P. art. 891; vagueness and ambiguity; improper joinder of parties (Razorback Oil Tools, Inc. and K.K. Lafleur, alleged to be necessary parties); lack of procedural capacity of Taylor Oil Tools Company; prescription; nonjoinder of indispensable party (Razorback Oil Tools, Inc. and K.K. Lefleur); no cause of action; and no right of action.
[5] The judgment orders that the motion for new trial filed on behalf of Razorback Oil Tools International, Inc., be denied; the judgment is silent as to the motion filed on behalf of Roscoe B. Smith. Despite this apparent oversight, both Razorback and Mr. Smith have appealed, urging error on the part of the trial court in denying a new trial. In light of our decision to remand, we must order the trial court to rule on Mr. Smith's motion consistently with this opinion.
[6] We use the term "attempted" because there is error in the paragraph that results in a negative award to the plaintiffs-in-reconvention. The erroneous paragraph reads as follows:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein against the plaintiffs and defendant (sic) in reconvention, Roscoe B. Smith and Razorback International Oil Tools, Inc. declaring the $650,000.00 note dated April 4, 1988 payable to the order of William T. Taylor in default and they hereby be (sic) ordered to pay to the defendant (sic) and plaintiff (sic) in reconvention, William T. Taylor and Taylor Oil Tools, Inc. the full sum of $50,000.00 (sic) with 10% interest thereon from August 5, 1981 (sic) together with attorney fees in the amount of 10% of the principal and interest due and owing subject to a credit of $90,000.00.
The two companies should not have been mentioned because their names were not on the note. Apparently, the "full sum" of $50,000.00 should have been $650,000.00. The note provides for a "variable" rate of interest; there is no evidence in the record as to why a 10% interest rate was used for the judgment. The date of the note was April 4, 1988; there is nothing in the record to support awarding interest from August 5, 1981.
[7] Whoever prepared the judgment changed the date on the Blanchard chart from "05-08-81" to August 5, 1981" instead of May 8, 1981, the date of the note.
[8] The trial court overruled the exception of prescription filed in September of 1991, but that ruling was ineffectual because proper service of process had not been made. On the date that the trial court overruled the second exception of prescription, February 3, 1992, the maker was not represented in court.
[9] Article 1971 of the Louisiana Code of Civil Procedure provides that the new trial may be granted on all or part of the issues.