658 So.2d 1270 (1995)
Roxanna AKERMAN,
v.
Richard M. DAWES and Scottsdale Insurance Company.
No. 94-CA-0757.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1995.
Order Dismissing Rehearing Application and Appeal July 12, 1995.
*1271 Kerry P. Cuccia, New Orleans, for plaintiff.
Charles E. McHale, Jr., and Thomas J. Lutkewitte, New Orleans, for defendants.
KLEES, ARMSTRONG and LANDRIEU, JJ.
ARMSTRONG, Judge.
This is an appeal from a default judgment. The plaintiff, Roxanna Akerman, sued defendants-appellants Leon Greenblatt and Arnold Cooper for personal injury. Both were duly served. Neither Greenblatt nor Cooper answered and preliminary defaults were entered against each. Almost a year later, following a default confirmation hearing, a default judgment was entered against Greenblatt and Cooper solidarily for $1,500,000.00 Greenblatt and Cooper have appealed as to both liability and quantum of damages. We affirm as to Greenblatt and reverse and remand for further proceedings as to Cooper.
As it is uncontested that the default judgment was procedurally proper, our review *1272 is limited to determining whether there was sufficient competent evidence introduced at the default confirmation hearing to support the default judgment entered. Waltzer v. U-Haul Co. of South Louisiana, 503 So.2d 574, 575 (La.App. 4th Cir.1987). The plaintiff must put on a prima facie case. La.Code Civ.Proc. art. 1702(A). A prima facie case shows that it is probable that the plaintiff would prevail if the case were actually tried. Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La.1989).
The evidence at the default confirmation hearing consisted of the testimony of the plaintiff, the testimony of the plaintiff's mother (as to the plaintiff's injuries) and a number of exhibits including many medical reports. Of course, as the defendants made no appearance in the case, there was neither cross-examination nor rebuttal evidence.
The plaintiff testified that she fell from a second-story porch of the apartment building in which she lived onto the concrete below because a rotten railing collapsed. Photographs of the collapsed railing were introduced into evidence. The plaintiff testified, and there was extensive medical documentation on this point, that she suffered a fractured sternum, fractures to several of the vertebrae in her back, a closed head injury to the left side of her head, a broken hand and a contused knee. She also testified as to the extensive and continuing medical treatment that she has received and this was shown in detail by the numerous medical reports which are discussed below.
The plaintiff sued the owner of the apartment building, a Dr. Dawes, but he is not a party to the present appeal. The plaintiff also sued Greenblatt as an alleged lessee of the building from Dawes. Apparently, the plaintiff's theory is that Greenblatt leased the entire building from Dawes and then subleased the individual apartments in the building to tenants such as the plaintiff. Lastly, the plaintiff sued Cooper as the manager (for Greenblatt) of the building. As to both Greenblatt and Cooper, the plaintiff alleges that they had "custody" of the building, that the rotten railing was an unreasonably dangerous defect of the building and that the rotten railing caused her injuries so that both Greenblatt and Cooper are liable to the plaintiff in strict liability pursuant to Article 2317 of the Civil Code.
Greenblatt argues that the evidence at the default confirmation hearing was not sufficient to show that he had "custody" of the building. Specifically, Greenblatt argues that there was not sufficient evidence that he was the lessee, from Dawes, of the building. There were two items of evidence as to the factual issue of whether Greenblatt was the lessee of the building. First, the plaintiff testified that Cooper collected rent and had repairs done on the building "for" Greenblatt. Second, a copy of a recorded lease was introduced into evidence that shows the building leased by Dawes to Greenblatt with the right to sublet. The initial five year term of the lease expired before the date of the plaintiff's fall, but the lease contained options for three extensions of five years each, and such extensions would continue the lease in effect well past the date of the plaintiff's fall. Together, these two items of evidence are just sufficient to support the factual conclusion that Greenblatt was the lessee of the building. The fact that the rents were being collected and repairs were being done "for" Greenblatt indicates that he must have exercised the options to extend the lease (or obtained a new lease from Dawes). The appellants' brief does not deny that Greenblatt was the lessee of the building. As the lessee of the building, Greenblatt had "custody" of the building for purposes of strict liability under Article 2317 of the Civil code. Loescher v. Parr, 324 So.2d 441, 449 n. 7 (La.1975); Catalano v. Walgreen's Corp., 470 So.2d 904, 906 (La.App. 4th Cir.1985).
Cooper also argues that the evidence at the default confirmation hearing was not sufficient to show that he had "custody" of the building. Specifically, Cooper argues that the evidence shows that he was simply a building manager, an agent, for Greenblatt. The plaintiff's testimony was that Cooper *1273 collected the rent and was the person to contact about repairs and that he had repairs done. However, the plaintiff also testified that Cooper did these things "for" Greenblatt. Thus, all of the limited evidence on point indicates that Cooper was only a building manager, an agent, for Greenblatt. There is no evidence that Cooper had any type of ownership, leasehold or other interest in the building. In a case with similar facts, we have held that such a building manager, an agent who collects rents, has repairs performed and does other tasks for the principal, is not subject to strict liability for injuries caused by defects in the building. Brown v. Soupenne, 416 So.2d 170 (La.App. 4th Cir.1982). Also, the Supreme Court has stated that, while a lessee has "custody" for purposes of strict liability under Article 2317 of the Civil Code, an agent does not. Loescher v. Parr, 324 So.2d 441, 449 n. 7 (La.1975). Thus the evidence at the default confirmation hearing was not sufficient to show that Cooper had "custody" of the building. Thus, the default judgment should not have been rendered against Cooper.
Greenblatt also argues that the amount of the judgment is excessive. The judgment is a lump sum which is not divided into special damages versus general damages (Greenblatt does not complain of that on appeal) in the amount of $1,500,000.00. We review the evidence to determine whether the evidence is sufficient to support a judgment of that size.
The plaintiff had medical expenses of $167,586.48. She had been employed as a secretary prior to the time of her injury, and had been employed for many years, but has not worked since her injury. There is very substantial medical evidence, discussed below, that she will not work again because of her injury. She was thirty-six years old at the time of her injury and, presumably, in the absence of her injury she would have worked to normal retirement age. Obviously, there was a large wage loss due to her injury.
There is abundant medical evidence, in the form of doctors' reports, as to the severity of the plaintiff's injuries and the physical and emotional pain and disability that she has suffered continues to suffer. We will give illustrative examples. Dr. Rosenbloom, of Touro Infirmary, who is board certified in physical medicine and rehabilitation, stated in his June 28, 1993 report that:
Ms. Akerman is a patient under my care. She is currently suffering from the effects of a fall from a balcony in January 1992, in which she experienced fractures of her thoracic vertebrae column, her sternum, and a fracture in the left hand. Due to the continued pain and weakness because of this injury Ms. Akerman is currently disabled. The duration of this status is indeterminate at this time.
In a November 20, 1992 report, Dr. Rosenbloom states:
Since her injury, the patient has had feelings of depression due to her pain ... I recommend that she see a psychologist, Dr. Pam Windham, for counseling concerning emotional management of the pain.
In January 13, 1993 report, Dr. Rosenbloom states:
It appears that the patient continues to be depressed and warrants such counseling.
A psychiatrist, Dr. Roger Anastasio, stated in his December 30, 1993 report:
In my opinion, Ms. Akerman's psychiatric diagnosis is Major Depression, Recurrent (DSM-III R 296.30) ... it is my opinion that Ms. Akerman's present symptomology is directly related to her injury of January 1992 and subsequent difficulties she has experienced since then as a result of the injury.
Dr. Lindsey, who treated Ms. Akerman until her discharge from the hospital, states in a December 1992 report:
I am pessimistic about Roxanna's long-term disabilities. It is very likely that she will suffer chronic back pain.... Her most urgent need is to find psychiatric counseling.
Two rehabilitation specialists, Drs. Gorman and Stamps, state in an August 12, 1993 report:

*1274 Ms. Akerman is without occupational opportunity due to an injury which occurred on January 28, 1992.... Return to work is not predictable at this time.
Dr. Black, the Director of Neuropsychology Laboratory of Tulane University Medical Center, evaluated Ms. Akerman on March 31, 1993. He found indications that the blow to the left side of her head during the fall had caused a closed-head injury which adversely affected her brain function in several respects.
Also, Ms. Akerman contracted pneumonia and, while it was not caused by the injuries from the fall, she was so debilitated by those injuries that her illness was much more severe and prolonged to the point that her doctor considered her lucky to have survived. In sum, in addition to her medical expenses and lost wage claim, the plaintiff is entitled to very substantial general damages.
Our review on appeal of the quantum of general damage awards is quite limited. The Supreme Court has stated:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient," Reck v. Stevens, 373 So.2d 498, 501 (La. 1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusion. Arceneaux v. Dominque, 365 So.2d 1330 (La. 1978). Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. See Reck v. Stevens, supra; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La. App. 2d Cir.1985).
Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993).
In the present case, although the judgment is a lump sum, with no itemization of special and general damages, it is apparent that most of the judgment is for general damages so we will review the quantum of the judgment on that basis. So doing, and applying the Youn and Theriot standard of appellate review, we do not believe that the trial court abused its much discretion in determining the amount of general damages. The plaintiff has suffered terrible physical and emotional injury which continued as of the date of the default confirmation hearing and which, according to the medical reports, will continue into the indefinite future. In *1275 addition to the medical reports, the testimony of the plaintiff's mother established that the injury destroyed a vigorous, productive lifestyle of the plaintiff. Thus, we see no abuse of the trial court's much discretion in this area.
In sum, as to the quantum of the judgment, we have reviewed it as best we can in view of its lump-sum nature, and we see no reversible error.
Greenblatt argues that the trial court erred by allowing into evidence an unsworn report by the plaintiff's expert witness economist. The report analyzed the plaintiff's damages. As the report stated that the plaintiff's damages were more than $9,000,000.00, and the total judgment was $1,500,000.00, it is apparent that the trial court did not find the report persuasive. Thus, if there was error in the admission into evidence of the report, it was harmless error.
Greenblatt also argues that the trial court erred by admitting into evidence the unsworn report of Dr. Windham. She was a psychologist who, according to her report, had a single interview with the plaintiff that was brief and ended abruptly. Thus, her findings were inconclusive. The only relevant substance to her report is that the plaintiff needed psychiatric care. As this same point was made by other doctors in their reports, Dr. Windham's report was merely cumulative of much other evidence on point. Thus, any error in the admission into evidence of Dr. Windham's report was harmless error.
Lastly, Greenblatt briefly argues that several of the physicians who provided reports were not "treating" physicians but, instead, merely examined the plaintiff. Thus, Greenblatt argues, their reports should not have been admitted into evidence and their bills should not be included in the special damages awarded. As to the evidentiary point, it was not error to admit medical reports into evidence simply because the doctors who provided those reports only "examined" the plaintiff rather than "treating" her. So long as the doctors had the necessary expert qualifications, and had examined the plaintiff so as to have knowledge of her medical condition (or otherwise acquired such knowledge), then their reports were relevant and admissible. La.Code Evid. art. 702-703. In other words, so long as they had the necessary expertise and the necessary information to which to apply their expertise, it makes no difference whether or not they "treated" the plaintiff. As to whether their bills should be included in the special damages, we note that it is not uncommon for treating physicians to refer patients to doctors in other specialties for examinations and consultations or reports. This allows the treating physician the benefit of the other doctors' specialized expertise. Put most directly, there is no indication in the record that any of the examinations was not medically necessary or advisable. Thus, the charges for the examinations for the "non-treating" physicians are recoverable.
For the foregoing reasons, we affirm the trial court judgment as to Greenblatt. We reverse the trial court and remand the case for further proceedings as to Cooper.
LANDRIEU, Judge concurs in part and dissents in part.
I concur with the majority holding on liability but find that the award of $1,500,000 is not supported by the record.

ON JOINT MOTION TO DISMISS
Considering the Joint Motion To Dismiss the above-entitled and numbered appeal and applications for rehearing with prejudice, filed by all parties,
IT IS ORDERED that the above-numbered and entitled appeal and applications for rehearing be and hereby are dismissed with prejudice, each party to pay its own costs.
New Orleans, Louisiana this 12th day of July, 1995.
 /s/ Robert J. Klees
Judge Robert J. Klees
*1276
 /s/ Joan Bernard Armstrong
Judge Joan Bernard Armstrong
 /s/ Moon Landrieu
Judge Moon Landrieu
In addition to dismissing the appeal and application for rehearing, I would dismiss the default judgment, as well as the suit between the parties, with prejudice as requested by the parties.
 /s/ Moon Landrieu
JUDGE MOON LANDRIEU