844 So.2d 942 (2003)
Ron OLIVER
v.
CAL DIVE INTERNATIONAL, INC.
No. 2002 CA 1122.
Court of Appeal of Louisiana, First Circuit.
April 2, 2003.
Rehearing Denied May 30, 2003.
*944 L. Clayton Burgess, Lafayette, Kreig A. Breaux, New Iberia, Counsel for Plaintiff-Appellee Ron Oliver.
Ralph E. Kraft, F. Douglas Gatz, Jr., Ray F. Lucas, Lafayette, Cameron B. Simmons, New Iberia, Counsel for Defendant-Appellant Cal Dive International, Inc.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
Cal Dive International, Inc. (Cal Dive) appeals the grant of a default judgment rendered against it in favor of Ron Oliver (Mr. Oliver). Following this court's consideration of the record and the issues presented on appeal, the trial court judgment is affirmed in part, reversed in part, amended in part, and remanded in part.
Cal Dive asserts the following five assignments of error on appeal: (1) the trial court erred in admitting medical evidence submitted by plaintiff/appellee, Mr. Oliver, in support of the default judgment; (2) the trial court erred in granting Mr. Oliver a default judgment for personal injury when he failed to establish a prima facie case of liability and damages, and the judgment entered by the trial court was contrary to the law and evidence; (3) the trial court erred in granting a default judgment for personal injury in the amount of $2,274,403.00 upon the evidence presented at the hearing for the confirmation of default; (4) the trial court erred in failing to grant a new trial on the peremptory grounds provided in La. C.C.P. art.1972(1) or the discretionary grounds provided in La. C.C.P. art.1973; and (5) the trial court erred by permitting the judge in Division B to hear and decide the motion for new trial rather than the judge in Division G, to whom the case was allotted.
Although Cal Dive includes in its assigned errors an alleged failure by Mr. Oliver to establish a prima facie case of liability, the argument on behalf of Cal Dive is limited to the issue of damages. Therefore, this court accepts, and affirms, the lower court finding that Mr. Oliver's neuropathy in his thumb was causally related to decompression sickness while diving in September 2000, and that he was a seaman.

MEDICAL EVIDENCE
In conjunction with the confirmation of default, Mr. Oliver submitted the following documents into the record: medical records from Culicchia Neurological Clinic, where Maria Carmen Espiritu, M.D. treated him; medical records from John P. Simanonok, M.D.; a radiology report of an MRI by Joan Wojak, M.D.; a report by G. Randolph Rice, Ph.D, economist; a report by Glenn M. Hebert, MRC, whose specialty was vocational rehabilitation; and federal income tax returns from several years. The medical records indicate that Mr. Oliver was "a commercial diver who suffered an episode of decompression sickness [from which] he is left with a residual neurological deficit in the left upper extremity, specifically over the area of the left thumb."
The general statutory regulations for the admissibility of hospital records are *945 located in La. R.S. 13:3714, which states, in part:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any... health care provider ... is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents ....
The medical records exception obviates the need for laying a foundation for admissibility. Judd v. State, Department of Transportation and Development, 95-1052, p. 6 (La.11/27/95), 663 So.2d 690, 694.
Admissible evidence in a confirmation of default is, additionally, regulated by La. C.C.P. art. 1702. Section B(2) of that code article provides the following in pertinent part: "When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand." Thereafter, section D contains the following directive: "When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony."
The pivotal issue before this court is whether, in light of the language enunciated in La. C.C.P. art. 1702 D, the submitted medical records were sufficient to establish the treating physician's professional diagnosis or, alternatively, whether a sworn narrative report attesting to the validity of the records was required for the establishment of prima facie evidence. See Bordelon v. Sayer, XXXX-XXXX, pp. 5-6 (La.App. 3 Cir. 3/13/02), 811 So.2d 1232, 1236-1237, writ denied, XXXX-XXXX (La.6/21/02), 819 So.2d 340. The medical records indicate that following the mid-September 2000 incident, Mr. Oliver was treated by Dr. Simanonok on September 22, 2000 and October 6, 2000. On January 31, 2001, Dr. Simanonok wrote a letter in which he referred to Mr. Oliver's medical status as follows: "Therefore, he is rendered unfit to dive and will no longer be able to work as a commercial diver." A May 16, 2001 report to Cal Dive contains the following prognosis by Dr. Simanonok: "I suspect he will end up being permanently disqualified from diving duty." Then in another letter, dated May 17, 2001, Dr. Simanonok states: "It is my opinion that Mr. Oliver is unfit to dive and will no longer be able to work as a commercial diver."[1]
Dr. Simanonok's letters in the medical records were sufficient to establish prima facie proof that Mr. Oliver was permanently unable to pursue a career in "commercial diving." Neither oral medical testimony nor a sworn narrative report was necessary. Therefore, the provisions of La. C.C.P. art. 1702 D are not apposite, and Dr. Simanonok's written findings are admissible.

DAMAGES
The trial court awarded the following in damages:

Past Lost Wages $ 101,000.00

*946
Past Medical Expenses $ 1,279.00
Past and Future Lost Employer-Paid Fringe Benefits $ 163,773.00
Future Lost Wages $1,358,351.00
 _____________
 Total Special Damages $1,624,403.00
Past Physical and Mental Pain and Suffering $ 250,000.00
Future Physical and Mental Pain and Suffering 250,000.00
Loss of Enjoyment of Life $ 150,000.00
 _____________
 Total General Damages $ 650,000.00
 Total Award $2,274,403.00

Mr. Oliver tendered the report of G. Randolph Rice, Ph.D., an economist, who assumed that Mr. Oliver's earnings were $97,500.00. Dr. Rice's $97,500.00 annual income estimate is based on a report by Glenn M. Hebert, MRC, LRC. Mr. Hebert noted that, but for the accident, Mr. Oliver could have continued to work, earning $85,000.00 to $110,000.00 per year.[2] Mr. Hebert also opined that Mr. Oliver had the "intellectual ability to re-enter the labor market earning $7.00 to $8.00 per hour" as of June 2001. Mr. Hebert wrote that he did not know whether Mr. Oliver would be a candidate for any type of additional vocational training until he underwent anticipated "neurological testing". When Dr. Rice projected the indicated annual income for Mr. Oliver's work life expectancy, he used Mr. Hebert's calculations to opine that Mr. Oliver was re-employable at $7.00 to $8.50 per hour. However, Dr. Rice failed to indicate the work life expectancy of a diver. Rather, Mr. Hebert obliquely stated that there is no reason why Mr. Oliver "could not have continued to work as a saturation diver and/or a diver until he elected to retire from this industry." Furthermore, Dr. Rice ascribed the income potential that was indicated as of June 2001, which Mr. Hebert acknowledged failed to take into consideration possible vocational training.
Awards for lost future income are intrinsically insusceptible of mathematical exactitude. As such, the judiciary must exhibit sound discretion in rendering awards that are consistent with the record and do not impose a hardship upon either party. Steadman v. Georgia-Pacific Corporation, 95-1463, p. 11 (La.App. 1 Cir. 4/6/96), 672 So.2d 420, 426-427, writ denied, 96-1494 (La.9/20/96), 679 So.2d 440. Notwithstanding the legal premise that future lost wages need not be established with mathematical certainty, the existence of only circumspect and deficient information, on which Dr. Rice based his forecast of future lost wages, does not support the projected income with reasonable certainty, even at a prima facie level. See Haydel v. Hercules Transport, Inc., 94-1246, p. 30 (La.App.4/7/95), 654 So.2d 418, 435-436, writ denied, 95-1172 (La.6/23/95), 656 So.2d 1019. The trial court's award of future lost wages in the sum of $1,358,351.00 and past and future lost employer paid fringe benefits (10% of gross wages into an employer contributed 401-K plan) in the sum of $163,773.00 is, therefore, an abuse of the court's discretion. In all other respects, the trial court's award of special damages, i.e., past lost wages and medical expenses, is not an abuse of discretion.
The trial court granted the following general damage award to Mr. Oliver: *947 past physical and mental pain and suffering, $250,000.00; future physical and mental pain and suffering, $250,000.00; and loss of enjoyment of life, $150,000.00. General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Turner v. Ostrowe, XXXX-XXXX, p. 15 (La.App. 1 Cir. 9/27/02), 828 So.2d 1212, 1224, writ denied, 2002-2940 (La.2/7/03), 836 So.2d 107. Factors to be considered in assessing the quantum to be awarded for pain and suffering are the severity and duration thereof. Fleniken v. Entergy Corporation, XXXX-XXXX, p. 29 (La. App. 1 Cir. 2/16/01), 780 So.2d 1175, 1194. Thus, the standard of review on appeal of 1993). general damage awards is concomitantly difficult to clarify and inherently nonspecific. Matos v. Clarendon National Insurance Company, 2000-2814, p. 4 (La.App. 1 Cir. 2/15/02), 808 So.2d 841, 845. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury, to the particular plaintiff, under the particular circumstances, that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Following the initial treatment for decompression sickness in the case at hand, the record contains no objective evidence of any physical injury other than to the left thumb. There is no documentation of the extent of past or future mental and physical pain and suffering beyond numbness in the left thumb; nor is there substantive evidence of any loss of enjoyment of life in the record. However, Mr. Oliver testified concerning the issue of in the judgment, the trial court judge referred to witness testimony as part of the basis for his judgment. Unfortunately, no transcript or narrative report was made of Mr. Oliver's testimony.[3]
The appellant bears the responsibility of securing either a transcript or a narrative of facts; therefore, an inadequacy inthe record is imputable to the appellant. Carter v. Barber Brothers Contracting Co., Inc., 623 So.2d 8, 10 (La.App. 1st Cir.), writ denied, 629 So.2d 1180 (La. 1993). In the absence of relevant portions of the transcript or a narrative report, this court does not possess the factual basis from which to determine whether the trial court abused its discretion in awarding Mr. Oliver $650,000.00 in general damages. Leger v. Lancaster, 423 So.2d 88, 89 (La.App. 1st Cir.1982). As a reviewing court, we are relegated to apply the presumption that the trial court's judgment is supported by competent evidenece and affirm the judgment. Succession of Populus, 95-1469, p. 4 (La.App. 1 Cir. 2/23/96), 668 So.2d 747, 749. Accordingly, the award for general damages is affirmed.

MOTION FOR NEW TRIAL
Louisiana Code of Civil Procedure article 1972 provides three peremptory grounds for the mandatory grant of a new trial: (1) when the verdict or judgment appears clearly contrary to the law and the evidence; (2) when the party has discovered, *948 since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; and (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. A judge also possesses the discretionary authority to grant a new trial "if there is good ground therefor ...." La. C.C.P. art. 1973.
In accordance with our prior review of the awards, this court finds that the portion of the judgment awarding future wages and employer-paid fringe benefits is clearly contrary to the evidence and controlling law. The motion for new trial on these limited issues is hereby granted. The trial court's denial of the motion for new trial is affirmed in all other respects.

COURT DIVISION
Cal Dive alleges that "[t]he trial court erred in permitting the judge in Division B to hear and decide the Motion for New Trial, rather than the Judge in Division G, to whom the case was allotted." Mr. Oliver's lawsuit was allotted to Division G of the Sixteenth Judicial District Court of the Parish of St. Mary. Judge Charles L. Porter served as the presiding judge of Division G. On November 6, 2001, Judge Porter signed an order for a preliminary default in favor of Mr. Oliver. Thereafter, acting as the duty judge for Division G, Judge Paul J. deMahay rendered a judgment confirming the default judgment against Cal Dive on December 7, 2001. Cal Dive filed a motion for new trial. On March 13, 2002, Judge deMahay heard oral argument in open court on the motion for new trial. He then rendered judgment on the rule, denying Cal Dive's motion for new trial.
Louisiana Code of Civil Procedure article 253.1 provides for random assignment of cases to the various divisions of the court. Moreover, La. C.C.P. art. 253.2 states in pertinent part: "After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial ... [or when] the supreme court, by rule, [has established] uniform procedures for reassigning cases...." In addition, the local rules of the Sixteenth Judicial District Court contain a section entitled "Allotment of Civil Cases." Section 3 of the local rules provides the following: "Once a case has been allotted all exceptions, motions, rules and trials on the merits shall be taken up by the Judge of the division to which the case is allotted, provided, however, that any uncontested matter, preliminary default or confirmation of default may be taken up before any division."
Judge deMahay was authorized to render judgment confirming the default against Cal Dive when it was presented to him in his capacity as the duty judge acting on behalf of Division G. However, his extended role when he, thereafter, received oral argument in a contradictory hearing on the motion for new trial and rendered a decision was effectively an improper interdivisional transfer of the case, as well as a violation of the dictates of the Sixteenth Judicial District Court's local rule. State v. Sprint Communications Company, L.P., 96-3094, p. 6 (La.9/9/97), 699 So.2d 1058, 1063. This court has previously echoed the Louisiana Supreme Court's emphasis that the concept of random assignment encompasses subsequent transfers to another division, which constitute a violation of public policy. Bourgeois v. Daigle, 97-2235, p. 5 (La.App. 1 Cir. 9/25/98), 720 So.2d 72, 74, writ denied, 98-3137 (La.2/5/99), 738 So.2d 11 (citing *949 Sprint Communications Company, L.P., 96-3094, pp. 3-4, 699 So.2d at.1062).
In the instant case, however, Cal Dive failed to object to the interdivisional transfer of the case when it was discussed at the hearing on Cal Dive's motion for new trial. Not until the instant appeal, was any formal challenge asserted. Thus, Cal Dive waived its right to object to the divisional transfer when it acquiesced to the forum at the trial level. Compare Bourgeois, 97-2235, pp. 10-11, 720 So.2d at 76-77; see also Roby v. Leonard, 209 So.2d 182, 184-185 (La.App. 1st Cir.1968).
In sum, the motion for new trial is granted to the limited extent of the issues of the awards for future lost income and the future lost employer-paid fringe benefits. These matters are remanded to the trial court for further proceedings consistent with this judgment. In all other respects, the trial court judgment is affirmed. Costs associated with this appeal are assessed equally to each party.
AFFIRMED, IN PART; REVERSED, IN PART; REMANDED, IN PART.
NOTES
[1] On July 20, 2001, after reviewing an unremarkable MRI, Dr. Maria Carmen Espiritu recommended an EMG nerve conduction study to rule out "cervical radiculopathy C5-C6-C7".
[2] The introduced federal tax return W-2 forms for Mr. Oliver reflect income sums that range from $51,892.02 to $88,051.99 for the years 1994, 1995, 1998, 1999 and 2000. In 1999 and 2000, Mr. Oliver had earned $58,141.83 and $53,213.93 respectively.
[3] Louisiana Code of Civil Procedure article 2131 provides: "If the testimony of the witnesses has not been taken down in writing the appellant must request the other parties to join with him in a written and signed narrative of the facts, and in cases of disagreement as to this narrative or of refusal to join in it, at anytime prior to the lodging of the record in the appellate court, the judge shall make a written narrative of the facts, which shall be conclusive."