980 So.2d 791 (2008)
Ansenio ARIAS and Lorena Arias
v.
STOLTHAVEN NEW ORLEANS, L.L.C., ABC Insurance Company, Stolt-Nielsen Transportation Group, Inc. a/k/a Stolt-Neilsen S.A., DEF Insurance Company, Certified Coating Inc., GHI Insurance Company, Kenneth R. Hebert, et al.
No. 2007-CA-0650.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 2008.
Rehearing Denied April 23, 2008.
*795 Dennis D. Spurling, Dennis Spurling PLLC, Houston, TX, and Deborah A. Pearce, New Orleans, LA, for Plaintiff/Appellees, Arsenio Arias and Family.
Robert I. Siegel, Andrew A. Braun, David B. Wilson, Gieger, Laborde & Laperouse, LLC, New Orleans, LA, for Defendant-Appellant, American Home Assurance Company.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge, CHARLES R. JONES and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
The defendant-appellant, American Home Assurance Company ("American"), appeals a default judgment confirmed on January 31, 2007, and signed on March 22, 2007, in favor of the plaintiffs-appellees, Arsenio and Lorena Arias and their minor children, Joseph Arias, Jeremy Arias, Natalie Arias, Mayra Arias, and David Arias, condemning American to pay to Arsenio Arias $2,338,140.10 in general damages, $439,512.07 in medical expenses, and $858,427.00 for lost wages; $50,000 to Lorena Arias; and $5,000.00 each to the minor children of Arsenio Arias  Joseph Arias, Jeremy Arias, Natalie Arias, Mayra Arias and David Arias.
This is a personal injury claim based upon allegations that the plaintiff, Arsenio Arias, an employee of Certified Coating, Inc., was injured when exposed to acrylonitrile, a dangerous and potentially fatal chemical, while doing a painting job for American's insured, Stolthaven New Orleans, L.L.C.
Plaintiffs' original petition was filed on January 12, 2004, naming a number of defendants, among whom were the aforementioned Stolthaven New Orleans, L.L.C. and its, at the time, unknown insurer.
On August 22, 2005, the plaintiffs filed a "First Amending and Supplemental Petition for Damages," adding American as a named defendant.
On October 26, 2005, service of process was made on American through the Secretary of State.
On June 26, 2006, an order of preliminary default was signed by the trial court, *796 which was not confirmed by the plaintiff until January 31, 2007, over six months later.
American does not raise any objections as to notice, service of process or timing of the default.
The primary issue raised by American is its contention that the default is defective because the evidence offered at the default did not include a copy of the policy of insurance upon which the claim against American is based, i.e., American argues that the only way to establish a prima facie case for coverage against an insurance company, in the absence of an admission of coverage by that company, is with a copy of a policy upon which the claim is based.
The plaintiffs' default partakes of the natures of both a conventional obligation, in that it is based upon an alleged contract of insurance, and a delictual obligation in that the plaintiffs' claim under the alleged policy arises out of personal injury. La. C.C.P. art. 1702, which sets forth the requirements for confirming a default, states in pertinent part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case....
B. (1) When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
(2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
The determination of whether there is sufficient proof to support a default judgment is a question of fact and should not be disturbed on appeal unless it is manifestly erroneous. Ledet v. Moe, 03-745 (La.App. 5 Cir. 12/9/03), 864 So.2d 643, 644. Where, as in the instant case, it is uncontested that entry of the default judgment was procedurally proper, appellate review is limited to determining whether there was sufficient evidence introduced at the default confirmation hearing to support the default judgment. Akerman v. Dawes, 94-0757 (La.App. 4 Cir. 1/19/95), 658 So.2d 1270, 1271-1272.
In reviewing a default judgment, an appellate court is restricted to determining whether the record contains sufficient evidence to prove a prima facie case. Rhodes v. All Star Ford, Inc., 599 So.2d 812, 813 (La.App. 1 Cir.1992). Although there is a presumption that the judgment confirming a default is supported by competent evidence, it does not apply when, as in this case, there is a transcript of the confirmation proceeding. Hickman v. Wm. Wrigley, Jr. Co., Inc., 33,896 (La. App. 2 Cir. 10/4/00), 768 So.2d 812, 815. A prima facie case is established as required for confirmation of a default judgment, when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied. Power Marketing Direct, Inc. v. Foster, 05-2023, pp. 11-12 (La.9/6/06), 938 So.2d 662, 670. A prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposing party. *797 Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La.1989). In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits. Thibodeaux, 538 So.2d at 1004.
The plaintiff is confined to the facts and the theories pled in his petition; he may not expand his pleadings by introducing evidence at the confirmation hearing. Thus, the plaintiff is precluded from obtaining a default judgment "different in kind from that demanded in the petition." La. C.C.P. art. 1703; See Spear v. Tran, 96-1490 (La.App. 4 Cir. 9/18/96), 682 So.2d 267. However, the Louisiana Supreme Court has held that "the pleadings which lead up to the demand, or prayer, upon which a default judgment is based are to be construed no more restrictively than pleadings suggestive of other judgments." Royal Furniture Co. of Baton Rouge, Inc. v. Benton, 260 La. 527, 532, 256 So.2d 614, 616 (1972).
At the confirmation hearing, the plaintiff offered a copy of the Memorandum of Insurance dated May 10, 2005, allegedly executed by a placement agent for American, Jardine Lloyd Thompson LLC, naming Stolthaven New Orleans LLC as the insured under American Home Assurance Company Commercial General Liabilities Policy No. ARS-3054. The policy period is shown as December 1, 2001, to September 1, 2003; the limits of liability are described as $1,000,000 per occurrence and $2,000,000 general aggregate and excess of U.S. $250,000 per occurrence. The policy period spans the period relevant to this litigation. The Memorandum of Insurance is annexed to a cover letter dated May 24, 2005, on the letterhead of the attorney for Stolthaven directed to the plaintiffs' attorneys, stating that:
Please find enclosed the Memorandum of Insurance received from insurance broker Jardine Lloyd Thompson LLC which shows Stolthaven New Orleans LLC is insured with American Home Assurance Company. This Memorandum of Insurance should answer your additional discovery requests.
We find this to be sufficient to establish a prima facie case even in the absence of the original policy.
Galland v. Nat'l Union Fire Ins. Co. of Pittsburgh, 452 So.2d 397, 398 (La. App. 3 Cir.1984) states that the best evidence rule does not apply at default judgment hearings; only competent evidence is required.
The only case with facts truly analogous to those of the instant case is that of Manuel v. Peninsular Life Ins. Co., 248 So.2d 871, 872 (La.App. 3 Cir.1971). In Manuel the plaintiff was required to purchase credit disability and credit life insurance in connection with the credit purchase of an automobile, he was issued a "Franchise Certificate" setting forth the terms of coverage. The Court held that that certificate was sufficient to constitute prima facie proof of coverage for default purposes.
All of the other cases cited by both parties are distinguishable.
In Burks v. Cambeck & Partners, 02-0324, p. 4 (La.10/15/02), 834 So.2d 968, 970, because the insurer was found to have admitted the existence of the policy in its motion for summary judgment it could not later assert that the policy had been cancelled. Burks is distinguishable from the instant case because the admission of the existence of the policy came directly from the insurer in the course of the litigation. Likewise, in Pendleton v. Spartan Building Construction, 432 So.2d 298, 301 (La. App. 5 Cir.1983), the court found coverage in the absence of a policy where the insurer *798 admitted in its answer that it had issued a policy. (American has made no such direct admission in the instant case.) As a result of this admission, the Pendleton court held the burden shifted to the insurer to show that no liability existed under the acknowledged policy.
While the direct admission by the insurer in Pendleton distinguishes it factually from the instant case, Pendleton is, nevertheless, relevant to the instant case to the extent that it expresses the rule of law that once coverage was determined to exist, the burden shifted to the insurer to show no liability  a burden that American cannot bear under the record we have before us.
This is consistent with this Court's opinion in Williams v. Bernard, 413 So.2d 198, 199 (La.App. 4 Cir.1982). Citing to consistent authority, this Court in Williams expressed two general rules regarding burdens of proof in insurance cases:
In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage. Collins v. New Orleans, Public Service, Inc., 234 So.2d 270 (La.App. 4th Cir.1970); writ refused, 256 La. 375, 236 So.2d 503 (1970); B.T.U. Insulators, Inc. v. Maryland Casualty Co., 175 So.2d 899 (La.App. 2d Cir. 1965). The insurer, however, bears the burden of showing policy limits or exclusions. Massachusetts Protective Ass'n. v. Ferguson, 168 La. 271, 121 So. 863 (1929); B.T.U. Insulators, Inc. v. Maryland Casualty Co., supra; Paz v. Implement Dealers Mutual Insurance Company, 89 So.2d 514 (La.App.1956). [Emphasis added.]
From these two rules we conclude that all that the plaintiff in the instant case needed to prove in order to establish a prima facie case for default purposes was the existence of the policy and coverage. Therefore, American's complaints that the absent policy may have contained hypothetical limitations and exclusions are not a sufficient basis without more for overturning the default judgment in favor of the plaintiffs. Those are defenses that American is barred from raising on appeal of a default. A defendant against whom a default judgment is confirmed may not assert an affirmative defense on appeal. Cunningham v. M & S Marine, Inc., 05-0805, p. 5 (La.App. 4 Cir. 1/11/06), 923 So.2d 770, 774; Hall v. Folger Coffee Co., 02-0920, p. 13 (La.App. 4 Cir. 10/1/03), 857 So.2d 1234, 1244-1245. We shall, therefore, limit our inquiry to the question of whether the evidence offered by the plaintiff was sufficient to establish a prima facie case for coverage in the absence of the policy itself.
In Succession of Rock v. Allstate Life Insurance Company, 340 So.2d 1325 (La. 1977), the Supreme Court found that coverage was deemed to be admitted when the insurance company failed to respond to requests for admissions concerning coverage. There are no requests for admissions in the record directed to American. The evidence offered by the plaintiff was obtained from third parties. American contends that Succession of Rock should be distinguished on that basis.
Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La. 1989), is also distinguishable because in that case the insurance policy was introduced  it was just not introduced by the insurance company defendant. Instead, it was offered by the insured owner of the policy.
The plaintiffs make much of the fact that at no time does American actually argue that it did not insure Stolthaven as alleged; nor does American ever affirmatively contend that there were any applicable *799 policy exclusions or limitations. The law is that in a default case, the plaintiff must prove his case as though each allegation in his petition had been denied, i.e., it is assumed that American denies coverage. However, there is no burden on the plaintiff to prove the non-existence of exclusions or limitations. Cases saying that admissions may be adequate to substitute for a missing policy are distinguishable because the admissions made in those cases were made directly by the insurer. In the instant case the admissions came from the insured, not the insurer, and were delivered to a third party, the plaintiffs  they were not admissions directly from the insurer to the insured.
The Supreme Court explained in the much cited and followed case of Ascension Builders, Inc. v. Jumonville, 262 La. 519, 263 So.2d 875 (1972), that where a default is based upon a claim arising out of a written document (such as the American insurance policy in the instant case), the document itself is a necessary element of proof in establishing a prima facie case. See also Mitchell v. Bradford, 06-1496 (La.App. 4 Cir. 6/20/06), 961 So.2d 1288. However, we feel that the result in Ascension Builders would have been different if the Court had before it documents analogous to the Memorandum of Insurance and attorney cover letter produced by the plaintiffs in the default proceedings in the instant case.
Both the very recent case of Nelson v. Merrick, 06-2381 (La.App. 1 Cir. 9/19/07), 970 So.2d 1019, and the older case of Holland v. Aetna Life & Cas. Ins. Co., 385 So.2d 316 (La.App. 1 Cir.1980), overturned default judgments where the insurance policy was not offered. Again, those cases had no evidence analogous to the Memorandum of Insurance and attorney cover letter produced by the plaintiffs in the default proceedings in the instant case.
After carefully considering all of the foregoing jurisprudence and studying the Memorandum of Insurance and the attorney cover letter in the context of the plaintiffs' discovery requests directed to Stolthaven, we are compelled to find, based on the unique facts of this case, that the plaintiffs succeeded in establishing a prima facie case for coverage even in the absence of a copy of the original policy issued by American.
Next, American contends that even if this Court should find coverage as we have, the plaintiffs then failed to make a prima facie case for causation concerning Mr. Arias' exposure to acrylonitrile and his resulting injuries. We, as did the trial court, have the distinct advantage in the instant case of having a reported decision by the Fifth Circuit concerning Mr. Arias' Workers' Compensation claim arising out of the same injuries that are the subject of the instant delictual appeal. Arias v. Certified Coating, Inc., 05-446 (La.App. 5 Cir. 2/14/06), 924 So.2d 298. In that case, the Fifth Circuit made the following findings based on the manifest error standard of review:
The Claimant testified that during the second week of his work at Stolthaven, in the latter part of January 2003, he could smell something peculiar and he experienced a bad taste in his mouth, a choking sensation, nausea and dizziness. During this time he was assigned to paint tank B50-9 which was filled with acrylonitrile. He testified that he reported this to his supervisor at Stolthaven, Kirk Stiles (Stiles), and his employer, Kenneth Hebert (Hebert). He testified that this continued while he worked at Stolthaven from January 16  February 5, 2003. He saw leaks in the pipes, valves and tanks of B50-9 on several occasions. He testified that his supervisor did not take him seriously *800 and told him that no one had died in over 17 years that he had been there. On one occasion when tank B50-9 had a confirmed leak, he was told to paint the neighboring tank, B50-10. He contends that he was very close to the leak and that tank B50-10 also had leaks. He testified that his employment was terminated on February 5, 2003. His medical records, commencing on February 13, 2003 confirm his physical complaints. Records from Dr. Pedro Romaguera and Dr. Joseph J. Creely from February of 2003 confirm that the Claimant had inflamed airways and pharynx consistent with chemical exposure.
Although there are differences between the testimony of Stiles and Hebert and the Claimant, the fact that he reported smelling something peculiar was confirmed. Furthermore, it was also confirmed that there was a small leak in a valve at tank B50-9 on January 27, 2003. Stiles testified that the area was taped off before the Claimant arrived at work that day and was repaired and inspected before anyone was allowed in the area again. Stiles also testified that he inspected the tank every day and there were no other leaks in the month of January. Hebert testified that the Claimant reported a peculiar smell but no physical symptoms. Hebert also disputed the fact that the Claimant was fired, testifying that he just didn't come to work after February 5, 2003.
Clearly, there were two permissible views of the evidence and after reviewing the record before us, we cannot say that the factfinder's choice between them was unreasonable or manifestly erroneous. The judge made credibility determinations in favor of the Claimant, and we find no reason to disturb those evaluations. Thus, we find no merit in the Defendants' argument that the judge erred in finding that the Claimant suffered injury due to an accident arising from his employment by being exposed to acrylonitrile during his employment.
Id., 05-446, pp. 5-6, 924 So.2d at 302.
American contends that the decision rendered in favor of Mr. Arias in his Workers' Compensation case should have no bearing in the instant case, citing the following quotation from Domingue ex rel. Domingue v. Allied Discount Tire and Brake, Inc., 02-1338 (La.App. 1 Cir. 5/9/03), 849 So.2d 690:
The record in the case at hand contains an excerpt from the workers' compensation hearing involving Domingue. Therein, the workers' compensation judge factually found that Domingue was not the initial aggressor. A factual conclusion issued from the bench falls short of a judgment of the court within the parameters of the application of the res judicata doctrine pursuant to La. R.S. 13:4231. Moreover, the procedural requisites and burdens of proof associated with a workers' compensation claim are divergent from the requisites of a tort case; therefore, a factual determination in one forum does not readily substitute for the evidentiary requirements of the other. The doctrine of res judicata is stricti juris and should be rejected when doubt exists as to whether a party's substantive rights have actually been previously addressed and finally resolved. Patin, XXXX-XXXX, p. 5, 808 So.2d at 676. [Emphasis added.]
Id., 849 So.2d at 695.
In furtherance of the reasoning in Domingue, American points out as an example of the evidentiary differences that exist between tort cases and Workers' Compensation cases is the fact that hearsay may *801 be admissible in Workers' Compensation cases, but that hearsay cannot be used to establish a prima facie tort default case.
First, we note that the fact that a Workers' Compensation judgment is not res judicata in a tort case as noted in Domingue, does not mean that under certain circumstances the reported findings in an appellate Workers' Compensation decision cannot be used in aid of establishing a prima facie case for default purposes in a related tort claim.
Second, our reading of the findings quoted earlier from the Fifth Circuit Arias opinion indicates that they were not based on hearsay.
Accordingly, we conclude that the findings in the reported decision by the Fifth Circuit in Mr. Arias' Workers' Compensation case are sufficient to allow the trial court in the instant case to make a prima facie finding of causation concerning the plaintiff's exposure to acrylonitrile and injury resulting therefrom.
Next is the question of whether and to what extent the plaintiffs succeeded in making a prima facie case in support of the amount damages awarded by the trial court as set forth at the outset of this opinion. In order to answer this question we must review the amount of each of the damage awards separately.
First, we note that American does not challenge the $5,000.00 awarded to each of Mr. Arias' five children. Nor does American challenge the $50,000.00 awarded to Mrs. Arias. Therefore, we find no error in the trial court's award of those amounts.
Having found for the plaintiffs on the questions of coverage and causation, we now turn to American's objection to the damage awards made in favor of Mr. Arias: general damages of $2,338,140.10; $439,512.07 for medical expenses; and $858,427.00 for lost wages. These awards depend in whole or in part upon Mr. Arias' medical records to such an extent that if the medical evidence is not competent we cannot sustain those awards.
American contends that the certified medical records offered by the plaintiffs at the default were inadmissible. It is American's position that only medical records sworn to in conformity with La. C.C.P. art. 1702 D are admissible, citing Dufrene v. Carter, 05-335 (La.App. 5 Cir. 11/29/05), 917 So.2d 1149. However, this Court adopts the contrary view as expressed in Oliver v. Cal Dive International, Inc., 02-1122 (La.App. 1 Cir 4/2/03), 844 So.2d 942, i.e., that certified medical records are admissible in support of a prima facie delictual personal injury default and that live physician testimony or a sworn affidavit in lieu thereof is only necessary where the other evidence offered, including certified medical records, is insufficient to establish the facts necessary for a prima facie case:
The general statutory regulations for the admissibility of hospital records are located in La. R.S. 13:3714, which states, in part:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any ... health care provider ... is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents ....
The medical records exception obviates the need for laying a foundation for admissibility. Judd v. State, Department of Transportation and Development, *802 95-1052, p. 6 (La.11/27/95), 663 So.2d 690, 694.
Admissible evidence in a confirmation of default is, additionally, regulated by La. C.C.P. art. 1702. Section B(2) of that code article provides the following in pertinent part: "When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand." Thereafter, section D contains the following directive: "When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony." The pivotal issue before this court is whether, in light of the language enunciated in La. C.C.P. art. 1702 D, the submitted medical records were sufficient to establish the treating physician's professional diagnosis or, alternatively, whether a sworn narrative report attesting to the validity of the records was required for the establishment of prima facie evidence. See Bordelon v. Sayer, XXXX-XXXX, pp. 5-6 (La.App. 3 Cir. 3/13/02), 811 So.2d 1232, 1236-1237, writ denied, XXXX-XXXX (La.6/21/02), 819 So.2d 340. The medical records indicate that following the mid-September 2000 incident, Mr. Oliver was treated by Dr. Simanonok on September 22, 2000 and October 6, 2000. On January 31, 2001, Dr. Simanonok wrote a letter in which he referred to Mr. Oliver's medical status as follows: "Therefore, he is rendered unfit to dive and will no longer be able to work as a commercial diver." A May 16, 2001 report to Cal Dive contains the following prognosis by Dr. Simanonok: "I suspect he will end up being permanently disqualified from diving duty." Then in another letter, dated May 17, 2001, Dr. Simanonok states: "It is my opinion that Mr. Oliver is unfit to dive and will no longer be able to work as a commercial diver." [FN1 omitted.]
Dr. Simanonok's letters in the medical records were sufficient to establish prima facie proof that Mr. Oliver was permanently unable to pursue a career in "commercial diving." Neither oral medical testimony nor a sworn narrative report was necessary. Therefore, the provisions of La. C.C.P. art. 1702 D are not apposite, and Dr. Simanonok's written findings are admissible. [Emphasis added.]
Id., 02-1122, pp. 3-4, 844 So.2d at 944-945.
We agree with Oliver that certified medical records are admissible at a default confirmation because when La. C.C.P. art. 1702 D is read in the context of La. C.C.P. art. 1702 as a whole, it becomes obvious that the purpose of 1702 D was to make it easier for a plaintiff to obtain a default, not to make it more difficult by requiring sworn medical records instead of merely certified medical records. What 1702 D is saying is that if an element of proof in the plaintiff's case is the testimony of a physician, then the plaintiff may offer his sworn statement in lieu of live testimony in confirmation of a default. La. C.C.P. art. 1702 D does not address itself to certified medical records.
American also cites Rowan Companies, Inc. v. Benoit, 01-0657 (La.App. 1 Cir. 5/10/02), 818 So.2d 952, but that case turns on what is required for a default judgment in a Workers' Compensation case under La. R.S. 23:1316.1. La. R.S. 23:1316.1 C sets forth the following requirement concerning medical evidence applicable to Workers' Compensation cases, but not to the Arias' tort claim in the instant case:

*803 C. Medical evidence shall include oral testimony, or a sworn narrative report from all treating and all examining health care providers. All other evidence may be presented by sworn affidavit. [Emphasis added.]
Because this same requirement is not set forth for tort claims, Rowan Companies is not applicable to the instant case.
We agree with Oliver that a prima facie case concerning medical issues may be made for default purposes under La. C.C.P. art. 1702(B)(2) without either oral physician testimony or a sworn narrative report in lieu thereof, depending on the quality of the evidence offered. In those cases in which the success of the plaintiff's prima facie case would normally require a physician's oral testimony, La. C.C.P. art. 1702 D merely gives the plaintiff the option of substituting a sworn narrative report in lieu thereof. There is nothing in La. C.C.P. art. 1702 D, expressed or implied, saying that oral physician testimony or a sworn narrative report in lieu thereof is the sine qua non of a prima facie case for default purposes. Thus, we conclude that certified medical records offered by the plaintiffs are admissible under La. R.S. 13:3714 when read in conjunction with La. C.C.P. art. 1702(B)(2); and are just as admissible as oral physician testimony or a sworn narrative report in lieu thereof under La. C.C.P. art. 1702 D.
Therefore, we find that the trial court committed no error in receiving the certified medical records offered by the plaintiffs in support of the default confirmation. In that regard we note that the following medical records are certified and are therefore admissible:
1. Southshore Lung Center  Matthew L. Schuette, M.D.  Scott D. Pethke, M.D.
2. East Jefferson Ear, Nose & Throat Clinic  J.J. Creely, Jr., M.D.
3. Jefferson Psychiatric Associates  Jonathon J. Rynning, M.D.
4. Veterans Spine & Rehab Center  Pedro Romaguera, M.D.
5. Dr. Andres G. Pedroza, M.D.
6. East Jefferson General Hospital
We note that the medical records of Dr. Paul Dash and Dr. J.S. Meyer are not certified. However, those records are cumulative in effect and, therefore, not necessary to the plaintiffs' prima facie case. Moreover, we may rely on the findings concerning those doctors set forth in the Fifth Circuit Arias Workers' Compensation opinion. Consequently, we find that the admissible medical records together with the reported decision in Mr. Arias' Workers' Compensation case and his own deposition testimony as well as his testimony and that of his wife at the confirmation hearing are sufficient to establish his claim for general damages as follows: The record supports a finding that Mr. Arias suffered stomach churning and vomiting; asthma symptoms; brain damage leading to headaches, dizziness, confusion, dementia and memory loss; sexual dysfunction; and eyesight deterioration, all leading to an inability to work and care for his family, which in turn has resulted in depression. Mr. Arias has to sleep sitting up because of his constant choking sensation and difficulty breathing. This, in turn, has caused radiating back and leg pains down the right side of his body. He uses inhalers and a nebulizer at home. He sees stars and spots and, on the right side of his brain, he experiences a shooting spectrum of blinding colors. He has a broad spectrum of ongoing pain and discomfort and has been prescribed numerous medications. He cannot walk, drive or even see well anymore. His brain damage is manifested by forgetting the names of his children *804 and putting his boot in the refrigerator. In many ways, Mr. Arias' brain damage would be viewed by most people as far more devastating than the usual orthopedic and cosmetic injuries found in the typical personal injury cases.
In Akerman v. Dawes, 94-0757 (La.App. 4 Cir. 1/19/95), 658 So.2d 1270, 1271-1272, this Court affirmed a general damage default award of $1,500,000.00, the general damages in the instant case are qualitatively of the same or greater magnitude as those of the Akerman case. Akerman was decided over 12 years ago. Even with a low rate of inflation the Akerman award would be in the ballpark of the general damage award before us in the instant case.
When the trier of fact (in this case, the trial judge) has made a general damage award and the defendant is contending that award is excessive, the "abuse of discretion" standard of appellate review applies. This standard is both hard to articulate and necessarily "non-specific." Cone v. National Emergency Services, Inc., 99-0934, p. 8 (La.10/29/99), 747 So.2d 1085, 1089 (citing Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993)).
In reviewing such an award, an appellate court's initial inquiry is whether the particular effects of the particular injuries on the particular plaintiff are such that there has been an abuse of the "much discretion" vested in the trier of fact (here the judge). Youn, 623 So.2d at 1260. The rationale behind the application of the "much discretion" standard in review of general damage quantum awards is that "awards of general damages, at least as to the amount awarded for injuries proved to have been caused by the tort, cannot be calculated with mathematical certainty." Guillory v. Insurance Co. of North America, 96-1084, p. 1 (La.4/8/97), 692 So.2d 1029, 1036 (Lemmon, J., concurring) (citing Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968)). For that reason, general damage awards are reviewed under the "much discretion" standard of La. Civ.Code art. 1999, which provides: "[w]hen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages." La. C.C. art. 1999; see also La.C.C. art. 2324.1 (providing "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury"). The jurisprudential theme that has emerged is that "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Youn, 623 So.2d at 1261.
Based upon the foregoing analysis, we find no abuse of the trial court's great and vast discretion in its award of $2,338,140.10 in general damages.
Likewise, based upon Mr. Arias' age (39) at the time of his exposure to acrylonitrile and his income as shown on the tax returns in the record, there is sufficient evidence in the record to support a prima facie case for the $858,427.00 in lost wages awarded by the trial court.
Finally we come to the award of $439,512.07 for medical expenses. As to this issue, the plaintiffs rely on Hall v. Folger Coffee Co., 02-0920, pp. 22-23 (La. App. 4 Cir. 10/1/03), 857 So.2d 1234, 1249-1250, but that case was reversed. Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90.
Regardless of whether we conclude that the plaintiffs have, even in the absence of specific figures, proven past medical expenses and the reasonable certainty that there will be medical expenses in the future even, the plaintiffs have been unable *805 to demonstrate from the record the existence of a prima facie case establishing that more likely than not that the past and future medical expenses in this case will aggregate anything close to the $439,512.07 awarded by the trial court. This is in no way meant to be construed as a finding that the figure is excessive. We merely find that the record fails to demonstrate a prima facie case in support of that amount, but that the plaintiffs are free to attempt to prove that amount at a trial on the merits of that issue on remand.
For the foregoing reasons, we affirm the judgment of the trial court as to the issues of causation and liability and as to the amounts awarded to Mr. Arias' wife and children. We also affirm the amounts awarded to Mr. Arias for general damages, and lost wages. We reverse only that portion of the judgment awarding medical damages to Mr. Arias and remand to the trial court for a trial on the merits of that issue only. It is further decreed that American shall bear the cost of this appeal.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.